## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

LEWIS LOWDEN and
ROBERT LOWDEN, personal
representative of the estate of JEAN
LOWDEN,

          Plaintiffs,

vs.

CLARE COUNTY, a municipal corporation,
LAWRENCE KAHSIN,
Clare County Sheriff's Deputy, in his
individual capacity, and CALVIN
WOODCOCK, Clare County Sheriff's
Deputy, in his individual capacity,

          Defendants.

Case No. 1:09-cv-11209

Hon. Thomas L. Ludington

_____/

Daniel S. Korobkin (P72842)
Michael J. Steinberg (P48085)
Kary L. Moss (P49759)
Attorneys for Plaintiffs
American Civil Liberties Union Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org
msteinberg@aclumich.org

Hugh M. Davis (P12555)
Cynthia Heenan (P53664)
Attorneys for Plaintiffs
Constitutional Litigation Associates, P.C.
450 W. Fort St., Ste. 200
Detroit, MI 48226
(313) 961-2255
conlitpc@sbcglobal.net

Patrick A. Aseltyne (P23293)
Jason D. Kolkema (P55936)
Attorneys for Defendants
Johnson, Rosati, LaBarge, Aseltyne & Field, P.C.
303 S. Waverly Road
Lansing, MI 48917
(517) 886-3800
paseltyne@jrlaf.com
jkolkema@jrlaf.com

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR DISMISSAL AND JUDGMENT ON THE PLEADINGS

For the reasons stated in the accompanying brief, Plaintiffs oppose Defendants' motion

for dismissal and judgment on the pleadings and request that said motion be denied.

Respectfully submitted,

/s/ Daniel S. Korobkin
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P48085)
Kary L. Moss (P49759)
American Civil Liberties Union Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org
msteinberg@aclumich.org

/s/ Hugh M. Davis with consent
Hugh M. Davis (P12555)
Cynthia Heenan (P53664)
Constitutional Litigation Associates, P.C.
450 W. Fort St., Ste. 200
Detroit, MI 48226
(313) 961-2255
conlitpc@sbcglobal.net

Attorneys for Plaintiffs

Dated:  August 20, 2009

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

LEWIS LOWDEN and
ROBERT LOWDEN, personal
representative of the estate of JEAN
LOWDEN,

               Plaintiffs,

vs.

                                 Case No. 1:09-cv-11209

CLARE COUNTY, a municipal corporation,         Hon. Thomas L. Ludington
LAWRENCE KAHSIN,
Clare County Sheriff's Deputy, in his
individual capacity, and CALVIN
WOODCOCK, Clare County Sheriff's
Deputy, in his individual capacity,

               Defendants.

_____/

Daniel S. Korobkin (P72842)
Michael J. Steinberg (P48085)
Kary L. Moss (P49759)
Attorneys for Plaintiffs
American Civil Liberties Union Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org
msteinberg@aclumich.org

Hugh M. Davis (P12555)
Cynthia Heenan (P53664)
Attorneys for Plaintiffs
Constitutional Litigation Associates, P.C.
450 W. Fort St., Ste. 200
Detroit, MI 48226
(313) 961-2255
conlitpc@sbcglobal.net

Patrick A. Aseltyne (P23293)
Jason D. Kolkema (P55936)
Attorneys for Defendants
Johnson, Rosati, LaBarge, Aseltyne & Field, P.C.
303 S. Waverly Road
Lansing, MI 48917
(517) 886-3800
paseltyne@jrlaf.com
jkolkema@jrlaf.com

_____/

**PLAINTIFFS' BRIEF IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR DISMISSAL AND JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ........................................................................................................................ 1

FACTS ......................................................................................................................................... 2

STANDARD OF REVIEW .......................................................................................................... 4

ARGUMENT ............................................................................................................................... 4

I.    DEFENDANTS' IMPROPERLY SUBMITTED EVIDENCE OUTSIDE
      THE PLEADINGS SHOULD BE EXCLUDED AND NOT CONSIDERED
      BY THE COURT IN RULING ON THEIR MOTION. .................................................. 6

II.   PLAINTIFFS' CLAIMS AGAINST CLARE COUNTY SHOULD NOT BE
      DISMISSED BECAUSE THE COMPLAINT ALLEGES FACTS WHICH
      SUPPORT A PLAUSIBLE CLAIM THAT THE LOWDENS WERE
      ARRESTED PURSUANT TO A MUNICIPAL POLICY. ............................................. 6

      A.   Plaintiffs' Complaint Alleges Sufficient Facts To State a Plausible
           Claim That They Were Arrested Pursuant to Municipal Policy. ...................... 6

      B.   Counties Are Liable Under 42 U.S.C. § 1983 Where, As Here,
           Enforcement of an Unconstitutional State Law Is Discretionary and
           They Choose To Enforce It. ............................................................................. 9

III.  PLAINTIFFS' FACIAL CHALLENGES SHOULD NOT BE DISMISSED
      BECAUSE, ASSUMING THE FUNERAL PROTEST STATUTE IS
      FACIALLY UNCONSTITUTIONAL, IT IS UNLAWFUL FOR
      DEFENDANTS TO ENFORCE IT. ........................................................................... 12

IV.   PLAINTIFFS' REMAINING CLAIMS SHOULD NOT BE DISMISSED
      UNDER THE QUALIFIED IMMUNITY DOCTRINE BECAUSE IT IS
      CLEARLY ESTABLISHED THAT ARRESTING THE LOWDENS
      UNDER THE CIRCUMSTANCES ALLEGED IS UNLAWFUL. ............................. 14

      A.   The Deputies Violated the Lowdens' Clearly Established First
           Amendment Rights by Enforcing M.C.L. § 750.167d Based on the
           Content of Their Speech. ................................................................................ 14

           1.   The Deputies' Conduct Violated the Lowdens' First Amendment
                Rights Against Content-Based and Viewpoint-Based
                Discrimination in a Public Forum. ........................................................ 15

2.  The Deputies Are Not Entitled to Qualified Immunity Because the Lowdens' First Amendment Rights in This Situation Were Clearly Established. ............................................................................. 19

B.  The Deputies Violated the Lowdens' Clearly Established Fourth Amendment Rights Because There Was No Reasonable Suspicion or Probable Cause To Believe They Were Committing Any Crime. .................. 20

    1.  The Lowdens' Fourth Amendment Rights Were Violated Because There Was No Reason To Believe They Were Committing Any Crime. ............................................................................. 20

    2.  The Deputies Are Not Entitled to Qualified Immunity Because the Lowdens' Fourth Amendment Rights in This Situation Were Clearly Established. ............................................................................. 23

C.  The Deputies Violated the Lowdens' Clearly Established Due Process Rights by Arresting Them for Violating a Statute That Was Unconstitutionally Vague As Applied to Them. .................................. 24

    1.  The Statute Is Unconstitutionally Vague As Applied Because No Person of Ordinary Intelligence Would Have Fair Notice That the Lowdens' Mere Presence in the Funeral Procession Would Be Reasonably Perceived As "Adversely Affecting" It. .......................... 24

    2.  The Deputies Are Not Entitled to Qualified Immunity Because the Lowdens' Due Process Rights in This Situation Were Clearly Established. ............................................................................. 25

CONCLUSION .................................................................................. 27

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Spear*, 356 F.3d 651 (6th Cir. 2004) .................................................................13

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...............................................................4, 7, 8, 9

*Ball v. Union Carbide Corp.*, 385 F.3d 713 (6th Cir. 2004) .......................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................4, 8

*Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716 (7th Cir. 1998) ..............11

*Bockes v. Fields*, 999 F.2d 788 (4th Cir. 1993) ............................................................11

*Boos v. Barry*, 485 U.S. 312 (1988) ....................................................16, 18, 19, 20

*Brotherton v. Cleveland*, 173 F.3d 552 (6th Cir. 1999) ..........................................9, 10

*Brown v. Louisiana*, 383 U.S. 131 (1966) ............................................................17

*Cady v. Arenac County*, __ F.3d __, 2009 WL 2253264 (6th Cir. July 30, 2009) ..............11

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) ...........................................................14

*Cohen v. California*, 403 U.S. 15 (1971) ...............................................................18

*Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005) ...................................................11

*Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*,
    477 F.3d 807 (6th Cir. 2007) ........................................................17, 19, 20

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ............................................................21

*Doby v. DeCrescenzo*, 171 F.3d 858 (3d Cir. 1999) ...............................................11

*Echols v. Parker*, 909 F.2d 795 (5th Cir. 1990) ....................................................11

*Evers v. County of Custer*, 745 F.2d 1196 (9th Cir. 1984) ......................................11

*Frisby v. Schultz*, 487 U.S. 474 (1988) ...............................................................15

*Galloway v. Hadl*, 548 F. Supp. 2d 1215 (D. Kan. 2008) .........................................5

*Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000) .......................................22, 23

*Garner v. Memphis Police Dep't*, 8 F.3d 358 (6th Cir. 1993) ...............................9, 12

*Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir. 1975) ........................17, 18, 20

*Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009) ................................................14, 19

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ..........................................24, 25

*Greenberg v. Life Ins. Co. of Am.*, 177 F.3d 507 (2d Cir. 1999) ...............................5

*Hague v. CIO*, 307 U.S. 496 (1939) ....................................................................15

*Harper v. City of Los Angeles*, 533 F.3d 1010 (9th Cir. 2008) ................................11

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) ....................25

*Hope v. Pelzer*, 536 U.S. 730 (2002) .................................................................... 19

*Humphrey v. Mabry*, 482 F.3d 840 (6th Cir. 2007) ............................................... 19

*Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999) .................................. 5

*Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000) ...................................... 5

*Jelovesek v. Bredesen*, 545 F.3d 431 (6th Cir. 2008) ............................................ 4

*Jones v. City of Cincinnati*, 521 F.3d 555 (6th Cir. 2008) .................................... 5

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 (6th Cir. 2007) .................. 4

*Kolender v. Lawson*, 461 U.S. 352 (1983) ............................................................. 25

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
    507 U.S. 163 (1993) ............................................................................................ 7

*Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) ................................... 12, 17, 26

*Lindsay v. Yates*, 498 F.3d 434 (6th Cir. 2007) ..................................................... 4

*Logsdon v. Hains*, 492 F.3d 334 (6th Cir. 2007) ....................................... 14, 15, 19, 22

*Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494 (6th Cir. 2006) ....... 5

*Meyers v. City of Cincinnati*, 14 F.3d 1115 (6th Cir. 1994) ................................... 6

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ........................................... 6, 8

*Newell v. Sauser*, 79 F.3d 115 (9th Cir. 1996) ..................................................... 26

*Palmer v. City of Euclid*, 402 U.S. 544 (1971) (per curiam) .......................... 24, 26

*Parsons v. City of Pontiac*, 533 F.3d 492 (6th Cir. 2008) .................................... 23

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ...................................... 6, 10

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) ............ 15

*Phelps-Roper v. Strickland*, 539 F.3d 356 (6th Cir. 2008) ................................... 13

*Phelps-Roper v. Taft*, 523 F. Supp. 2d 612 (N.D. Ohio 2007) .............................. 13

*Pleasant Grove City v. Summum*, 129 S. Ct. 1125 (2009) ..................................... 17

*Pusey v. City of Youngstown*, 11 F.3d 652 (6th Cir. 1993) .................................. 11

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ............................................. 15, 17

*Radvansky v. City of Olmstead Falls*, 395 F.3d 291 (6th Cir. 2005) .................... 23

*Rose v. Saginaw County*, 353 F. Supp. 2d 900 (E.D. Mich. 2005) ..................... 4, 11

*Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007) .................................... 26

*Sandul v. Larion*, 119 F.3d 1250 (6th Cir. 1997) ................................................. 18

*Saucier v. Katz*, 533 U.S. 194 (2001) ............................................................. 14, 19

*Schenck v. Pro-Choice Network*, 519 U.S. 357 (1997) .......................................... 13

*Shqeirat v. U.S. Airways, Inc.*, 515 F. Supp. 2d 984 (D. Minn. 2007) .................. 5

iv

*Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037 (6th Cir. 1991) ......................................9

*Smith v. Goguen*, 415 U.S. 566 (1974) ......................................25

*Smith v. Plati*, 258 F.3d 1167 (10th Cir. 2001) ......................................5

*Smith v. School Dist. No. 6*, 241 Mich. 366 (1928) ......................................10

*Surplus Store & Exchange, Inc. v. City of Delphi*, 928 F.2d 788 (7th Cir. 1991) ..................10

*Sutton v. Cadillac Area Public Schools*, 117 Mich. App. 38 (1982) ......................................10

*Swiecicki v. Delgado*, 463 F.3d 489 (6th Cir. 2006) ......................................15, 20, 23, 24

*Tenney v. Brandhove*, 341 U.S. 367 (1951) ......................................13

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005) ......................................10

*United States v. Arvizu*, 534 U.S. 266 (2002) ......................................21

*United States v. Salisbury*, 983 F.2d 1369 (6th Cir. 1993) ......................................24, 26

*Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008) ......................................11

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ......................................15

*Weiner v. Klais & Co.*, 108 F.3d 86 (2d Cir. 1997) ......................................5

*Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187 (6th Cir. 1997) ......................................12

*Wong v. City & County of Honolulu*, 333 F. Supp. 2d 942 (D. Haw. 2004) ......................................11

## Statutes

28 U.S.C. § 2403 ......................................13

42 U.S.C. § 1983 ......................................6, 9, 26

M.C.L. § 750.167d ......................................*passim*

M.C.L. § 764.15 ......................................10

## Court Rules

Fed. R. Civ. P. 5.1 ......................................13

Fed. R. Civ. P. 8 ......................................9

Fed. R. Civ. P. 12 ......................................4, 5

Fed. R. Civ. P. 15 ......................................9

Fed. R. Civ. P. 24 ......................................13

## <u>INTRODUCTION</u>

Lewis and Jean Lowden were engaged in completely innocent activity -- attending the funeral of a close family friend, Corporal Todd Motley -- when they were arrested and taken to jail for allegedly violating Michigan's funeral protest statute, M.C.L. § 750.167d.[1]  Although they were driving in the funeral procession at the invitation of Corporal Motley's family and did nothing to disrupt the procession or funeral, the Lowdens were stopped and arrested for allegedly violating M.C.L. § 750.167d solely because the van they were driving happened to display signs critical of then-President Bush and other government officials and policies.

Defendants in this action, Clare County and two sheriff's deputies, make no serious effort to defend the constitutionality of M.C.L. § 750.167d.  Instead, they argue that this lawsuit should be dismissed because the Lowdens were not arrested pursuant to any county "policy" and because the deputies who arrested them are entitled to qualified immunity.

---

[1] The statute provides as follows:

> A person shall not do any of the following within 500 feet of a building or other location where a funeral, memorial service, or viewing of a deceased person is being conducted or within 500 feet of a funeral procession or burial:
>
> (a)  Make loud and raucous noise and continue to do so after being asked to stop.
>
> (b)  Make any statement or gesture that would make a reasonable person under the circumstances feel intimidated, threatened, or harassed.
>
> (c)  Engage in any other conduct that the person knows or should reasonably know will disturb, disrupt, or adversely affect the funeral, memorial service, viewing of the deceased person, funeral procession, or burial.

M.C.L. § 750.167d(1).  Violation of the statute is punishable as a felony.  *Id.* § 750.167d(2).

1

Defendants' motion should be denied.  Clare County is liable for its policy decision to enforce M.C.L. § 750.167d.  And the deputies, in arresting the Lowdens, violated clearly established law under the First, Fourth, and Fourteenth Amendments.

## FACTS

On September 26, 2007, Lewis and Jean Lowden traveled to Clare County to attend the funeral of Corporal Todd Motley, a close family friend who was killed in action in Iraq while serving in the United States Army.  The Lowdens had known Corporal Motley and his family for many years.  Jean homeschooled Todd in high school, and Lewis took him on fishing and camping trips in the summer.  Lewis and Jean were devastated by his death.  (Compl. ¶¶ 13-14.)

Corporal Motley's family invited the Lowdens to attend and to participate in Corporal Motley's funeral service, including a funeral procession through the town of Harrison, Michigan, which is located in Clare County.  The funeral procession through downtown Harrison was a widely publicized and heavily attended event.  Hundreds of onlookers lined the streets to pay their respects to Corporal Motley.  Many waved American flags and displayed signs thanking Corporal Motley for his service to our country.  (*Id.* ¶¶ 15-16.)

The Lowdens drove to the funeral in their Dodge Ram van.  For several years, Lewis had taped homemade signs to the inside windows of his van.  The signs, similar to bumper stickers, contained statements visible to observers outside the van.  The statements on the signs were political in nature; most were critical of then-President Bush and government policies.  The Lowdens had driven the van with these signs for years without incident.  They were still on display when the Lowdens arrived for Corporal Motley's funeral.  The signs did not contain any statements critical of the military or Corporal Motley.  (*Id.* ¶¶ 17-19.)

2

Upon arrival, the Lowdens were asked if they intended to drive in the funeral procession from the church to the burial site.  They Lowdens said yes, and they were directed to a parking lot for all the procession vehicles.  A funeral flag was placed on top of the Lowdens' van.  No one made any comment to the Lowdens about the signs on their van. (*Id*. ¶ 20.)

Following the church service, the Lowdens entered the funeral procession and drove for approximately two miles.  Defendant Lawrence Kahsin, a Clare County Sheriff's Deputy who was directing funeral traffic along the procession route, was informed by a fellow officer at a different location that there was a van in the funeral procession with anti-government protest signs in its windows.  Although he had no information to suggest that the Lowdens' participation in the funeral procession had caused any disruption or disturbance, Deputy Kahsin ordered the Lowdens to pull over to the side of the road.  Defendant Calvin Woodcock, another Clare County Sheriff's Deputy, arrived on the scene to assist.  (*Id*. ¶¶ 21-25.)

Deputy Kahsin approached the Lowdens' van and asked Lewis why he had signs in his windows.  Lewis replied that it was his First Amendment right to criticize the government.  Deputy Kahsin then asked both Jean and Lewis if they were protesting.  They both replied that they were not protesting and that they were there to attend the funeral because they were like family to Corporal Motley.  Nonetheless, Deputy Kahsin and Deputy Woodcock placed Lewis and Jean under arrest for violating M.C.L. § 750.167d.  The police impounded their van, and the Lowdens were detained in jail for approximately twenty-four hours before being released on personal recognizance.  The criminal charges against them were eventually dismissed without prejudice.  (*Id*. ¶¶ 26-29.)  This suit followed.

3

## STANDARD OF REVIEW

In ruling on a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure,[2] the court must consider all factual allegations in the complaint as true and grant the motion only if the moving party is nonetheless entitled to judgment as a matter of law. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). To survive the motion, "the complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The motion must be denied if the complaint, construed in the light most favorable to the plaintiff, entitles him to relief under any legal theory. *Jelovesek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008); *Rose v. Saginaw County*, 353 F. Supp. 2d 900, 915 (E.D. Mich. 2005).

## ARGUMENT

### I.    DEFENDANTS' IMPROPERLY SUBMITTED EVIDENCE OUTSIDE THE PLEADINGS SHOULD BE EXCLUDED AND NOT CONSIDERED BY THE COURT IN RULING ON THEIR MOTION.

Before responding to the merits of Defendants' motion, Plaintiffs object to Defendants' submission of police photographs and a police incident report as exhibits to their brief. These are matters "outside the pleadings." Fed. R. Civ. P. 12(d). A motion for judgment on the pleadings tests the legal sufficiency of a complaint; it is not a vehicle for submitting evidence. In deciding a motion under Rule 12, the district court must exclude all matters outside the

---

[2] Defendants have filed a motion "for dismissal and judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c)." (Defendants' Mot. at 1.) Inasmuch as it rests on Rule 12(b)(6), their motion is untimely because it was not "brought prior to answering the complaint." *Lindsay v. Yates*, 498 F.3d 434, 437 n.4 (6th Cir. 2007). Defendants' motion should thus be treated only as a Rule 12(c) motion, although "the legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same." *Id.* n.5.

pleadings. *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006).

Defendants' exhibits should therefore be excluded.[3]

Defendants' argument that these exhibits should be allowed because they fall within

"exceptions to the general rule covering matters outside the pleadings" (Defs.' Br. at 6) has no

support in the law. Police reports, when submitted in support of a Rule 12 motion, are uniformly

excluded as matters outside the pleadings. *See, e.g.*, *Smith v. Plati*, 258 F.3d 1167, 1176 (10th

Cir. 2001); *Jacobs v. City of Chicago*, 215 F.3d 758, 765-66 (7th Cir. 2000) (also excluding

police photographs); *Galloway v. Hadl*, 548 F. Supp. 2d 1215, 1218 n.2 (D. Kan. 2008); *Shqeirat

v. U.S. Airways, Inc.*, 515 F. Supp. 2d 984, 992 (D. Minn. 2007). There is no reason to treat the

police reports and photographs in this case any differently.

Typically, a defendant's exhibits are permitted under Rule 12(d) only when their very

existence is "central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745

(6th Cir. 1999). Examples of such documents are the contract underlying a breach-of-contract

claim, a fund prospectus in a securities fraud claim, an insurance policy in a dispute between

insurer and insured, and a pension plan document in an ERISA case. *See Greenberg v. Life Ins.

Co. of Am.*, 177 F.3d 507, 514 (2d Cir. 1999); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (2d Cir.

1997); *Shqeirat*, 515 F. Supp. 2d at 992. Unlike those examples, the police report in a civil

rights case "does not itself form the basis for the allegations" and therefore cannot be deemed

part of the complaint. *Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008).

---

[3] If the court does not exclude matters outside the pleadings, it must convert Defendants'
motion to one for summary judgment. *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d
494, 503 (6th Cir. 2006); *see* Fed. R. Civ. P. 12(d). Conversion would not be appropriate at this
juncture, however, because this case is in its early stages and Plaintiffs have not had an adequate
opportunity for discovery. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004).

Because Defendants' police report and photographs must be excluded as matters outside the pleadings, the court should also exclude from consideration the "facts" Defendants improperly assert in their brief based on their exhibits.  (*See* Defs.' Br. at 2-3, 17.)  The only facts the court should consider are those alleged by Plaintiffs.

## II.    PLAINTIFFS' CLAIMS AGAINST CLARE COUNTY SHOULD NOT BE DISMISSED BECAUSE THE COMPLAINT ALLEGES FACTS WHICH SUPPORT A PLAUSIBLE CLAIM THAT THE LOWDENS WERE ARRESTED PURSUANT TO A MUNICIPAL POLICY.

Defendants do not actually defend the constitutionality of M.C.L. § 750.167d.  Instead, they contend that Plaintiffs' claim of municipal liability against Clare County fails for two reasons.  First, they argue that Plaintiffs' complaint contains no factual allegations of an official policy as required by *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Second, they argue, as a matter of law, that local enforcement of an unconstitutional state law can never subject a municipality to liability under 42 U.S.C. § 1983.  Both these arguments are wrong.

### A.    Plaintiffs' Complaint Alleges Sufficient Facts To State a Plausible Claim That They Were Arrested Pursuant to Municipal Policy.

Under *Monell*, if an "action pursuant to official municipal policy of some nature caused a constitutional tort," then the municipality is liable as the wrongdoer.  *Id*. at 691.  Municipal policy need not be a written ordinance; it may be a "statement" or "decision" by a high-ranking official, such as a county sheriff or city police chief, "whose edicts or acts may fairly be said to represent official policy."  *Id*. at 690, 694; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 (1986) (municipal liability may be imposed for a single decision by an official who "possesses final authority to establish municipal policy with respect to the action ordered"); *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994) (same).  The question in this case, therefore, is whether individual officers were acting entirely on their own in arresting the

Lowdens for allegedly protesting Corporal Motley's funeral in violation of M.C.L. § 750.167d, or whether they were acting instead pursuant to a municipal policy to make arrests of that nature.

Defendants argue that Plaintiffs failed to allege facts to support a facially plausible claim that their arrest was the result of any municipal policy under the *Monell* theory of liability. But it is misleading and inaccurate for Defendants to assert that Plaintiffs' claim of municipal liability is wholly contained within paragraphs 44 through 46 of the complaint and then argue, based on this assertion, that Plaintiffs "have provided nothing more than a 'formulaic recitation of the elements of a cause of action.'" (Defs.' Br. at 7.) The three paragraphs cited by Defendants contain the "legal conclusions" that "provide the framework of a complaint." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Defendants have omitted from consideration the entire "Facts" section of Plaintiffs' complaint, which contain the "factual allegations" in support of those legal conclusions. *Id.* Factual allegations are pleaded in paragraphs 13 through 29 of the complaint and "plausibly give rise to an entitlement to relief." *Id.*

As pleaded in the complaint, the funeral procession was a widely publicized and heavily attended event with hundreds of onlookers lining the streets. (Compl. ¶ 16.) Clare County officers were actively involved, directing funeral traffic along the procession route from the church to the burial site several miles away. (*Id.* ¶ 22.) A fellow officer notified Deputy Kahsin that there was a van in the procession with anti-government protest signs in its windows. (*Id.*) Deputy Kahsin stopped the van, questioned its occupants, and along with Deputy Woodcock arrested them for violating M.C.L. § 750.167d. (*Id.* ¶¶ 24-27.)

Under the pleading standards of Rule 8(a)(2), the basis for a municipal liability claim need not be pleaded with factual detail or particularity. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). A complaint must merely plead "factual

content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (emphasis added). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.

Based on the factual matter contained in Plaintiffs' complaint, the following reasonable inferences -- informed by judicial experience and common sense -- are warranted. First, because Corporal Motley's funeral procession was a planned, highly publicized event on the streets of a small town,[4] it did not escape the notice and attention of persons whose edicts or acts may fairly be said to represent official policy. Second, in light of highly publicized protests at the military funerals of other American soldiers who had died in Iraq and the Michigan Legislature's enactment of a statute designed to prevent such protests (*see* Defs.' Br. at 12), policymakers determined that anyone who protested the funeral and procession of Corporal Motley should be stopped and arrested. Third, that decision, followed by instructions implementing it, was the "moving force" behind the Lowdens' arrest on September 26, 2007. *Monell*, 436 U.S. at 694.

These reasonable inferences, which arise from the facts alleged, easily meet the "plausibility" standard under *Iqbal*. In that case, the complaint was dismissed because even though its factual allegations were "consistent with" a theory of liability, there were also "more likely explanations" that rendered the complaint's legal conclusions implausible. *Iqbal*, 129 S. Ct. at 1951; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007). In this case, by contrast, it is virtually inconceivable that sheriff's deputies directing traffic in Clare County would just happen to be aware of M.C.L. § 750.167d, and be prepared to make an arrest based on an alleged violation of that statute, unless county officials had instructed them to be on the

---

[4] The United States Census Bureau estimates that Harrison had a 2008 population of 1,993. *See* Population Finder at http://www.census.gov/.

lookout for such violations and to make such arrests.  For that reason, Defendants' argument that

Plaintiffs failed to plead the existence of a municipal policy should be rejected.[5]

### B.    Counties Are Liable Under 42 U.S.C. § 1983 Where, As Here, Enforcement of an Unconstitutional State Law Is Discretionary and They Choose To Enforce It.

Defendants contend that Clare County cannot be liable for enforcing an unconstitutional

state statute, but their position is undermined by two binding precedents of the Sixth Circuit.  In

*Garner v. Memphis Police Department*, 8 F.3d 358 (6th Cir. 1993), the court rejected the city's

argument that it could not be held liable for implementing an unconstitutional state statute

authorizing the use of deadly force on nondangerous fleeing felons.  *Id.* at 364.  Although the

statute authorized the use of deadly force in such situations, it did not require it, and it did not

prevent the city from instituting a more restrictive deadly force policy.  The city, having made a

"deliberate choice" to authorize deadly force, was therefore liable under *Monell*.  *Id.*

Similarly, in *Brotherton v. Cleveland*, 173 F.3d 552 (6th Cir. 1999), the Sixth Circuit held

that a county coroner sued in his official capacity[6] could not escape *Monell* liability for removing

the corneas of the plaintiff's dead husband over her objections despite the existence of a state

statute that purportedly authorized him to do so.  *Id.* at 562-67.  As in *Garner*, the statute

condoned, but did not require, the removal of corneas under such circumstances.  The coroner, in

his policymaking capacity, "voluntarily implemented a policy of corneal harvesting," even

though he "could have chosen not to use his authority under the state statute" and "could have

---

[5] In the event the court concludes that Plaintiffs' complaint requires more detailed factual allegations to meet the pleading requirements of Rule 8, Plaintiffs would request leave, pursuant to Rule 15(a)(2), to amend their complaint.  *See Iqbal*, 129 S. Ct. at 1954; *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991).

[6] A suit against an individual in his official capacity is equivalent to a suit against the entity of which he is an agent.  *Brotherton*, 173 F.3d at 562.

9

opted to act differently, or not to act." *Id.* at 566. He was therefore potentially liable in his official capacity pursuant to *Monell*.

*Garner* and *Brotherton* compel a similar result here. A violation of the funeral protest statute is a felony, and under Michigan state law "a peace officer, without a warrant, ***may*** arrest a person" who commits a felony "in the peace officer's presence." M.C.L. § 764.15 (emphasis added). The term "may" is discretionary, unlike "shall," which is mandatory. *Sutton v. Cadillac Area Public Schools*, 117 Mich. App. 38, 42 (1982) (citing *Smith v. School Dist. No. 6*, 241 Mich. 366 (1928)). In other words, no law enforcement officer or agency is *required* to arrest a person who violates M.C.L. § 750.167d. *See also Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 760 (2005) (noting the "well established tradition of police discretion" in enforcing state law). Accordingly, Clare County "could have chosen not to use [its] authority under the state statute," *Brotherton*, 173 F.3d at 566, but instead made a policy decision, "a deliberate choice to follow a course of action . . . made from among various alternatives," *Pembaur*, 475 U.S. at 483, which led directly to the unconstitutional arrests of Lewis and Jean Lowden.

Defendants rely primarily on a decision of the Seventh Circuit, *Surplus Store & Exchange, Inc. v. City of Delphi*, 928 F.2d 788 (7th Cir. 1991), which rejected a plaintiff's claim for *Monell* liability based on a police officer's acts pursuant to an allegedly unconstitutional state statute. That case did not even involve a policy decision made by a municipality or high-ranking official. In any event, subsequent Seventh Circuit case law has embraced the Sixth Circuit's distinction "between the state's command (which insulates the local government from liability)

and the state's authorization (which does not)." *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998). That distinction is critical in this case.[7]

Defendants also cite *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993), for the proposition that "a city official pursues her duties as a state agent when enforcing state law or policy." In *Pusey*, however, the plaintiff did not even allege that a municipal policy existed. *Id.* at 659. *Pusey* is therefore not dispositive of *Monell* liability when there is an alleged municipal policy reflecting a deliberate decision to enforce a state law. In fact, a recent Sixth Circuit decision confirms that *Pusey* applies only to an individual act by a county prosecutor enforcing state law, whereas *Brotherton* and *Garner* govern cases involving municipal policy choices that result in a law enforcement act. *Cady v. Arenac County*, __ F.3d __, 2009 WL 2253264, at *7 (6th Cir. July 30, 2009). Here, Plaintiffs do not allege that the individual officers' act in arresting the Lowdens is itself sufficient to support municipal liability. Instead, that act was the result of a policy choice made by Clare County to enforce M.C.L. § 750.167d. Clare County is liable for that policy even if it happens to be consistent with an unconstitutional state law.[8]

---

[7] Most other circuits to have considered the issue agree with the Sixth Circuit and would hold a municipality liable for its deliberate decision to enforce an unconstitutional state law. *See Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008); *Cooper v. Dillon*, 403 F.3d 1208, 1223 (11th Cir. 2005); *Evers v. County of Custer*, 745 F.2d 1196, 1203 (9th Cir. 1984). Furthermore, the cases cited by Defendants in footnote 9 of their brief do not support their position. *Bockes v. Fields*, 999 F.2d 788 (4th Cir. 1993), involves local implementation of a *mandatory* state policy. In *Doby v. DeCrescenzo*, 171 F.3d 858 (3d Cir. 1999), the court discussed the issue but ultimately declined to decide it. The court in *Wong v. City & County of Honolulu*, 333 F. Supp. 2d 942 (D. Haw. 2004), distinguishes between a general policy to enforce all state laws and a deliberate choice to enforce a specific statute. And *Echols v. Parker*, 909 F.2d 795 (5th Cir. 1990), is a case about attorney's fees, not municipal liability.

[8] Defendants are incorrect to reason that Clare County is not liable under the Fourth Amendment because "the legality of an arrest necessarily depends upon the facts and circumstances presented in each case." (Defs.' Br. at 10.) Municipal liability will lie so long as (1) Plaintiffs were stopped and arrested in violation of the Fourth Amendment and (2) municipal policy was the moving force behind those arrests. *See, e.g.*, *Harper v. City of Los Angeles*, 533 F.3d 1010, 1027 (9th Cir. 2008); *Rose v. Saginaw County*, 353 F. Supp. 2d 900, 916, 922-23

### III.    PLAINTIFFS' FACIAL CHALLENGES SHOULD NOT BE DISMISSED BECAUSE, ASSUMING THE FUNERAL PROTEST STATUTE IS FACIALLY UNCONSTITUTIONAL, IT IS UNLAWFUL FOR DEFENDANTS TO ENFORCE IT.

Defendants' second argument in support of their motion is that Plaintiffs' facial challenges to M.C.L. § 750.167d must be dismissed.[9]  Again, Defendants do not defend the facial constitutionality of the statute.  Dismissal is required, they say, because a facial challenge attacks the language of a statute, and the defendants in this case did not actually write M.C.L. § 750.167d.  They have no "particular interest" in the statute, and thus will "leave it to the Michigan Attorney General's Office" to defend its facial constitutionality.  (Defs.' Br. at 13.)

Defendants offer no legal authority to support this argument, and there is none.  It is unlawful to enforce a facially unconstitutional statute.  *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997).  Because Defendants Kahsin and Woodcock, acting under color of law, arrested the Lowdens for allegedly violating the challenged statute, they are potentially liable for their actions.  *See Leonard v. Robinson*, 477 F.3d 347, 356 (6th Cir. 2007) (denying qualified immunity to officer who arrested plaintiff for allegedly violating facially invalid state laws).  And as previously discussed, Clare County is liable for unlawful arrests caused by its policy of enforcing the statute.  *See Garner*, *supra*.

Defendants' arguments to the contrary do not hold water.  First, it is irrelevant that Defendants did not actually draft the statute Plaintiffs challenge.  If that were the test for a facial

---

(E.D. Mich. 2005).  Because Plaintiffs have stated a claim that they were stopped and arrested in violation of the Fourth Amendment as a result of Clare County municipal policy, Defendants' motion should be denied as to Plaintiffs' Fourth Amendment municipal liability claim.

[9] Defendants mistakenly state that Plaintiffs' facial challenges "have been asserted against the individual Defendants *alone*."  (Defs.' Br. at 11 (emphasis added).)  Plaintiffs assert a claim that M.C.L. § 750.167d is unconstitutional on its face.  This claim runs against Clare County inasmuch as enforcement of the statute was municipal policy.

challenge to a statute, then there would be no facial challenges because legislators are absolutely immune from civil liability for their legislative acts. *Tenney v. Brandhove*, 341 U.S. 367 (1951).

Second, Defendants' professed lack of any "particular interest in the contested statute" does not entitle them to judgment on the pleadings. Plaintiffs, of course, do have a "particular interest" in a facially unconstitutional statute not being enforced against them by Defendants.

Third, although Defendants may prefer that the Attorney General defend the statute, the Attorney General is not a party to this case. The State of Michigan may intervene as of right. 28 U.S.C. § 2403(b); Fed. RR. Civ. P. 5.1(c), 24(a)(1). Whether the Attorney General actually becomes a party to this litigation, however, has no bearing on whether Defendants are entitled to judgment on the pleadings with regard to Plaintiffs' facial challenges to M.C.L. § 750.167d.

Because Defendants' brief does not actually argue that M.C.L. § 750.167d is facially constitutional, Plaintiffs join Defendants in reserving argument on their facial challenges for a later stage of this case. (*See* Defs.' Br. at 13 n.6.) For now it should be sufficient to note that Defendants are not entitled to judgment on the pleadings with regard to the facial challenges simply because they do not wish to litigate that issue.[10]

---

[10] It is unclear why Defendants disclaim "arguments related to the facial constitutionality" of the statute but then proceed to cite *Phelps-Roper v. Strickland*, 539 F.3d 356 (6th Cir. 2008), for the proposition that the Sixth Circuit upheld the constitutionality of a "similar" statute. (Defs.' Br. at 13.) Whatever their rationale, the Ohio statute upheld in *Phelps-Roper* is different from M.C.L. § 750.167d in at least three very important respects. First, the Ohio statute does not make it illegal to "adversely affect" a funeral -- the very provision of the Michigan statute the Lowdens were arrested for allegedly violating, and the very language Plaintiffs now challenge as facially vague and overbroad. Second, the Sixth Circuit upheld the Ohio statute's 300-foot buffer zone, whereas the buffer zone under the Michigan statute is 500 feet -- a buffer-zone area the Sixth Circuit has previously held is unconstitutionally overbroad. *See Anderson v. Spear*, 356 F.3d 651, 657-63 (6th Cir. 2004). Third, although the Sixth Circuit upheld the Ohio statute's *stationary* buffer zone, it specifically did not rule on the provision of the Ohio statute governing *moving funeral processions*. In fact, that provision had been declared facially unconstitutional by a federal district court months before the Lowdens were arrested. *See Phelps-Roper v. Taft*, 523 F. Supp. 2d 612, 620 (N.D. Ohio Mar. 23, 2007). *Cf. Schenck v. Pro-Choice Network*, 519

**IV.    PLAINTIFFS' REMAINING CLAIMS SHOULD NOT BE DISMISSED UNDER THE QUALIFIED IMMUNITY DOCTRINE BECAUSE IT IS CLEARLY ESTABLISHED THAT ARRESTING THE LOWDENS UNDER THE CIRCUMSTANCES ALLEGED IS UNLAWFUL.**

In examining Defendants' qualified immunity defense, the court must "construe the plaintiff's complaint liberally, in plaintiff's favor, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007). If "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted,'" then qualified immunity must be denied. *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). In this case, the law was clearly established at the time of the Lowdens' arrest that the deputies' actions as alleged in the complaint were unlawful under the First, Fourth, and Fourteenth Amendments. Qualified immunity is therefore not warranted at this stage, and the court should deny Defendants' motion.

**A.    The Deputies Violated the Lowdens' Clearly Established First Amendment Rights by Enforcing M.C.L. § 750.167d Based on the Content of Their Speech.**

At the heart of this lawsuit is Plaintiffs' claim that the Lowdens were stopped and arrested for exercising their First Amendment right to publicize their political beliefs. "Most Americans would be understandably dismayed . . . to learn that it was illegal to display from their window an 8- by 11-inch sign expressing their political views." *City of Ladue v. Gilleo*, 512 U.S. 43, 58 (1994). Although Deputies Kahsin and Woodcock argue that they stopped and arrested the Lowdens in a good-faith effort to enforce a state statute making it unlawful to "adversely affect" a funeral (*see* Defs.' Br. at 17), their enforcement of that statute based on the content of the Lowdens' speech was unconstitutional under clearly established First Amendment law.

---

U.S. 357 (1997) (upholding 15-foot "fixed buffer zones" around abortion clinics but striking down 15-foot "floating buffer zones" around persons seeking access to the clinics).

1.    **The Deputies' Conduct Violated the Lowdens' First Amendment Rights Against Content-Based and Viewpoint-Based Discrimination in a Public Forum.**

The Supreme Court has developed the "public forum" doctrine to scrutinize government restrictions on free speech. "In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Such places include public streets, which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO*, 307 U.S. 496, 515 (1939). In a public forum, the government may impose reasonable regulations on the "time, place, and manner" of expression, "but only if they are justified without reference to the content of the regulated speech." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992) (internal quotation marks omitted).[11] "Content-based regulations are presumptively invalid." *Id.* at 382.

Assuming for the sake of argument that M.C.L. § 750.167d is on its face a reasonable "time, place, and matter" regulation,[12] a content-based *application* of that statute in a public forum is plainly impermissible. Facially constitutional statutes are always open to as-applied challenges. *See Frisby v. Schultz*, 487 U.S. 474, 488 (1988). And the Sixth Circuit has held that individual law enforcement officers violate the First Amendment when they enforce a facially neutral statute based on the content of a person's speech. *See Logsdon v. Hains*, 492 F.3d 334, 346 (6th Cir. 2007); *Swiecicki v. Delgado*, 463 F.3d 489, 501 (6th Cir. 2006). In other words,

---

[11] "Time, place, and manner" restrictions also must be narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

[12] As noted *supra*, Plaintiffs intend to challenge the facial validity of M.C.L. § 750.167d at a later stage of this case.

even if the Michigan statute's ban on conduct adversely affecting a funeral is facially content-neutral, police may not, consistent with the First Amendment, determine that a particular person driving down the street is violating the statute because of the subject-matter or viewpoint of that person's speech.  That is exactly what happened in this case.

The Lowdens, like everyone else in the funeral procession, were driving slowly and peacefully from the church to the burial site.  (Compl. ¶ 21.)  No one complained about the Lowdens' van, and it caused no noticeable disturbance or disruption of the funeral procession.  (*Id*. ¶¶ 20, 23.)  The funeral flag on the van indicated that they were invited guests.  (*Id*. ¶ 20.)  Many people along the procession route waved American flags and displayed their own signs thanking Corporal Motley for his service to this country.  (*Id*. ¶ 16.)  It was only when police learned that the Lowdens' van displayed anti-government protest signs that the Lowdens were stopped.  (*Id*. ¶¶ 22, 24.)  Deputy Kahsin, despite having no information that the Lowdens were causing any trouble, immediately interrogated them about the signs in their van.  (*Id*. ¶¶ 23, 26.)  Despite the Lowdens' insistence that they had been invited to the funeral and were not there to protest, Kahsin and Woodcock placed them under arrest.  (*Id*. ¶¶ 27-28.)

From these facts it is reasonable to conclude that Defendants' actual enforcement of M.C.L. § 750.167d was neither content- nor viewpoint-neutral.[13]  Regarding content, it is obvious that during Corporal Motley's funeral procession the public display of messages covering certain topics was allowed, whereas others were forbidden.  Signs with messages about Corporal Motley were permitted; political commentary was not.

---

[13] Regulation of speech based on content excludes certain *subject matters*, whereas viewpoint discrimination favors a particular position *about* a given subject.  *See Boos v. Barry*, 485 U.S. 312, 319 (1988).

As for viewpoint, the Lowdens were targeted because the messages on their signs contained *anti*-government views. In a public forum, viewpoint-based regulation of speech is always forbidden. *Pleasant Grove City v. Summum*, 129 S. Ct. 1125, 1132 (2009); *see also R.A.V.*, 505 U.S. at 384 ("the government may proscribe libel" but may not proscribe "*only* libel critical of the government"). On the facts alleged, the Lowdens were stopped because the messages on their signs were anti-government.[14]

Defendants offer three related explanations for these events in an attempt to justify the deputies' conduct. First, they argue that they were "entitle [sic] to consider the possibility of an adverse reaction by others" to the messages on the Lowdens' signs. (Defs.' Br. at 18.) Second, they argue that the Lowdens' signs were not protected by the First Amendment because they were "fighting words." (*Id*.) Third, they argue that it was permissible for the deputies to consider the content of the Lowdens' speech in order to determine whether it would "adversely affect" the funeral. (*Id.* at 21.) These arguments are meritless.

First Amendment law soundly rejects the "heckler's veto." One's peaceful expression of a political opinion cannot be suppressed merely because others, "unprovoked except by the fact of the constitutionally protected demonstration itself, . . . might react with disorder or violence." *Brown v. Louisiana*, 383 U.S. 131, 133 n.1 (1966). In *Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir. 1975), the Sixth Circuit held that police officers could not confiscate and destroy a peaceful demonstrator's sign criticizing the President simply because it "unintentionally evoked a

---

[14] The complaint also supports a claim of First Amendment retaliation: "Plaintiffs' allegations, if proven at trial, could be taken by a reasonable jury to support their claim that Defendants were motivated to detain them in part because of their constitutionally protected speech." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821-23 (6th Cir. 2007); *see also Leonard v. Robinson*, 477 F.3d 347, 361-62 (6th Cir. 2007). Because Plaintiffs' complaint so clearly supports a claim of content- and viewpoint-based discrimination, it is unnecessary to dwell at length on a separate retaliation claim.

hostile reaction from others." *Id.* at 905.  In this case, too, the deputies were not permitted to stop and arrest the Lowdens merely because their signs might hypothetically cause an "adverse reaction by others" later during the procession.

There is also no way to construe the Lowdens' conduct as "fighting words."  Fighting words are "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke a violent reaction." *Cohen v. California*, 403 U.S. 15, 20 (1971).  Only a "personal insult" "directed to the person of the hearer" can be construed as fighting words. *Id.* (internal quotation marks omitted).  And the speech must be "an invitation to exchange fisticuffs" likely to "incite an immediate breach of the peace." *Sandul v. Larion*, 119 F.3d 1250, 1255 (6th Cir. 1997) (internal quotation marks omitted).  The messages on the Lowdens' van were political statements, not personal insults directed at anyone present at Corporal Motley's funeral.  Signs pasted to the inside of a van's windows containing messages generally critical of the government are not inherently likely to provoke an immediate violent reaction.  Certainly no reasonable observer of the Lowdens, driving in the funeral procession with a funeral flag on display, would view their conduct as an invitation to exchange fisticuffs.  The fighting words doctrine does not apply.

Lastly, insofar as Defendants argue that the deputies properly considered the content of the Lowdens' speech because they were motivated by a content-neutral desire to prevent the funeral from being "adversely affected" by it, the Supreme Court has rejected that argument as well.  In *Boos v. Barry*, 485 U.S. 312 (1988), the Court struck down an ordinance banning displays within 500 feet of an embassy that bring a foreign government into disrepute.  In defending the ordinance, the government argued that the ban was not content-based because its justification -- protecting the dignity of foreign diplomats -- was a content-neutral concern over

the "secondary effects" of some kinds of speech.  The Court was not persuaded: "The emotive impact of speech on its audience is not a 'secondary effect.'"  *Id.* at 321.  Here, too, the deputies were not permitted to determine that some kinds of speech "adversely affect" a funeral.  That is precisely the type of content-based enforcement of law the First Amendment forbids.

> **2.    The Deputies Are Not Entitled to Qualified Immunity Because the Lowdens' First Amendment Rights in This Situation Were Clearly Established.**

Because Defendants have raised the affirmative defense of qualified immunity, the court must determine whether the First Amendment rights discussed above were clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.  To defeat qualified immunity, a plaintiff need not identify "a case with the exact same fact pattern or even fundamentally similar or materially similar facts."  *Grawey*, 567 F.3d at 313 (internal quotation marks omitted).  "Even when confronting a novel factual situation, a reasonable officer is 'on notice' that his conduct violates clearly established constitutional rights if the state of the law at the time of the alleged deprivation provides 'fair warning' that his actions are unconstitutional."  *Humphrey v. Mabry*, 482 F.3d 840, 852 (6th Cir. 2007) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Here, First Amendment law clearly establishes that the deputies' conduct as alleged in the complaint was unconstitutional.  In *Logsdon*, 492 F.3d 334, an anti-abortion protester alleged that his arrest for trespassing lacked probable cause and was based on the content of his speech.  The Sixth Circuit, explaining that "[i]t has long been the case that content-based regulations of the citizen's right to engage freely in speech in quintessential public fora presumptively violate the First Amendment," ruled that qualified immunity must be denied.  *Id.* at 346.[15]

---

[15]  The same holds true under a First Amendment retaliation theory.  In *Center for Bio-Ethical Reform*, 477 F.3d 807 (6th Cir. 2007), anti-abortion activists were detained by the police

Qualified immunity should be denied in this case, too, because the deputies were on notice that content- and viewpoint-based suppression of speech are unlawful. It was also clearly established that they could not arrest a speaker based on a potential "heckler's veto," *Glasson*, 518 F.2d at 905, that no reasonable officer in their position would have thought the Lowdens' conduct qualified as "fighting words," *see Swiecicki*, 463 F.3d at 501, and that the content of their speech could not form the basis for a determination that it would "adversely affect" the funeral, *Boos*, 485 U.S. at 321. Their only potential defenses involve questions of fact.

**B.** **The Deputies Violated the Lowdens' Clearly Established Fourth Amendment Rights Because There Was No Reasonable Suspicion or Probable Cause To Believe They Were Committing Any Crime.**

In addition to violating the First Amendment, the deputies violated the Lowdens' Fourth Amendment rights by stopping them without reasonable suspicion and arresting them without probable cause. Assuming the truth of the allegations in Plaintiffs' complaint and drawing all reasonable inferences in their favor, there was absolutely no evidence the Lowdens were violating any law, including M.C.L. § 750.167d. The Fourth Amendment's reasonable suspicion and probable cause standards are clearly established, and no reasonable officer in the deputies' position would think that either a stop or an arrest was warranted.

**1.** **The Lowdens' Fourth Amendment Rights Were Violated Because There Was No Reason To Believe They Were Committing Any Crime.**

The deputies' conduct in this case must satisfy two separate standards of the Fourth Amendment. Deputy Kahsin could order the Lowdens to pull over for a brief investigatory stop only if he had a "reasonable suspicion to believe that criminal activity may [have been] afoot,"

---

for three hours, and they sued on a First Amendment retaliation claim. The Sixth Circuit, noting that the right to be free from police retaliation for the exercise of constitutional rights is clearly established, concluded that the dispositive issue was the intent of the police officers -- a classic question of fact for the jury. *Id*. at 824. Qualified immunity was denied. *Id*. at 825.

20

"justified by some objective manifestation" that the Lowdens were, or were about to be, "engaged in criminal activity."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted).  Then, Kahsin and Woodcock could make a warrantless arrest of the Lowdens only if there was "probable cause" to believe they had committed or were committing a crime, an inquiry that "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer[s] at the time of the arrest."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  Neither standard was met in this case.

Defendants assert that the deputies were justified in stopping and arresting the Lowdens for violating M.C.L. § 750.167d because subsection (1)(c) of that statute prohibits, among other things, conduct that the person knows or should reasonably know will "adversely affect" a funeral procession.  (Defs.' Br. at 17.)  Defendants' brief is notable for the fact that it never explains why or how the mere presence of a van with homemade signs taped to the inside of its windows could "adversely affect" a funeral.  Defendants state that the display was a "distraction" and "completely out of context for the setting," and that the Lowdens' van "stood out as an oddity from all other vehicles in the procession" (*id.*), but this is not what the statute prohibits.[16]  Defendants also argue that the Lowdens "could have just as easily left their signs at home" (*id.*), but this fact, too, has no relevance to whether the Lowdens' conduct adversely affected the funeral procession.

The Plaintiffs' complaint contains no articulable facts that would warrant a reasonable suspicion by Deputy Kahsin that the Lowdens were committing a crime.  A funeral flag was on display on top of their van, indicating that they were approved participants in the procession.  (Compl. ¶ 20.)  They were not honking their horn, driving erratically, or engaged in any

---

[16] To support these statements Defendants improperly refer the court to exhibits outside the pleadings.  *See* Argument I, *supra*.

abnormal conduct.  No one complained about the van.  Kahsin had no information that the Lowdens adversely affected the funeral procession in any way.  (*Id*. ¶ 23.)  He stopped the van because it had signs in its windows.

Even assuming, for the sake of argument, that *stopping* the van was not a violation of the Fourth Amendment, the deputies learned nothing during their subsequent investigation to establish the probable cause required for a full-fledged custodial *arrest*.  The arrest was lawful only if a prudent person would be warranted in believing the Lowdens were committing a crime; the probable cause inquiry depends upon the reasonable conclusion to be drawn from the facts known at the time of the arrest.  *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007).  The deputies, upon interrogating the Lowdens, learned that they were not protesting and were driving in the funeral procession because they were like family to Corporal Motley.  (Compl. ¶ 26.)  Although the deputies were not required to believe the Lowdens' statements, they also obtained no additional information to suggest the Lowdens were violating M.C.L. § 750.167d.

The Sixth Circuit has held that a police officer "must consider the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest."  *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).  If most evidence points to innocence, the police "cannot look only at the evidence of guilt while ignoring all exculpatory evidence."  *Id*.  In this case, the Lowdens were driving slowly in the funeral procession with a funeral flag on their van; they told the police that they were not protesting and were at the funeral because they were like family to the deceased; the police had no information to suggest the Lowdens were lying; and the funeral procession was proceeding normally.  Considering the totality of the circumstances, the mere presence of political signs taped to the inside of the Lowdens' van did not give the deputies probable cause to arrest them.

"In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Parsons v. City of Pontiac*, 533 F.3d 492, 502 (6th Cir. 2008) (internal quotation marks omitted).  Based on the facts alleged, this is not a case in which the only reasonable determination with respect to probable cause is one that favors the arresting officers.  A jury could easily find that the information known to the deputies when they arrested the Lowdens falls well short of the probable cause standard.  *See id*. at 503.

> **2.      The Deputies Are Not Entitled to Qualified Immunity Because the Lowdens' Fourth Amendment Rights in This Situation Were Clearly Established.**

The Sixth Circuit routinely denies qualified immunity in cases of warrantless arrests without probable cause because it is clearly established that such arrests are unconstitutional. *See id*. at 504; *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 310 (6th Cir. 2005); *Gardenhire*, 205 F.3d at 313.  As previously discussed, Plaintiffs need not identify a case with a materially similar fact pattern; the issue is "whether the officers' alleged actions were objectively unreasonable in light of the clearly established right." *Radvansky*, 395 F.3d at 310.  In this case, the Lowdens were exhibiting no conduct that could be reasonably construed as "adversely affecting" a funeral.  The deputies' actions in stopping them for further questioning and then arresting them for violating M.C.L. § 750.167d were therefore objectively unreasonable.

Cases such as this one that involve both Fourth Amendment and First Amendment claims are particularly unsuited to qualified immunity.  Only a person's conduct, not his speech, can be the basis for a finding of probable cause.  *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006).  In *Swiecicki*, the plaintiff was arrested for "disorderly conduct" at a baseball game because he heckled a player on the field.  The disorderly conduct statute in that case -- which is similar to the "adversely affect" provision of M.C.L. § 750.167d -- prohibited "'conduct likely to be offensive or to cause inconvenience, annoyance, or alarm.'" *Id*. at 499.  The plaintiff admitted

23

to some heckling but insisted there was nothing offensive or inappropriate about his conduct.  *Id.*
The Sixth Circuit ruled that this was a question of fact for the jury, and qualified immunity was
denied.  *Id.* at 500.  The result in this case should be no different.

      **C.**      **The Deputies Violated the Lowdens' Clearly Established Due Process**
                        **Rights by Arresting Them for Violating a Statute That Was**
                        **Unconstitutionally Vague As Applied to Them.**

      In the unlikely event the deputies had probable cause to believe the Lowdens were
violating M.C.L. § 750.167d, that statute's prohibition on "adversely affecting" a funeral is so
vague that its application in this case violates due process as a matter of law.  "It is a basic
principle of due process that an enactment is void for vagueness if its prescriptions are not
clearly defined."  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Even if a statute is not
impermissibly vague on its face, it is subject to a due process challenge when its application in a
particular case "failed to give a person of ordinary intelligence fair notice that his contemplated
conduct is forbidden."  *Palmer v. City of Euclid*, 402 U.S. 544, 545 (1971) (per curiam) (internal
quotation marks omitted); *see also United States v. Salisbury*, 983 F.2d 1369, 1378 (6th Cir.
1993) (holding "multiple voting" statute void for vagueness as applied).  Although Plaintiffs
reserve argument on whether M.C.L. § 750.167d is *facially* unconstitutional under the vagueness
doctrine,[17] it certainly cannot be applied to the Lowdens' conduct in this case consistent with the
Due Process Clause.

      **1.**      **The Statute Is Unconstitutionally Vague As Applied Because**
                      **No Person of Ordinary Intelligence Would Have Fair Notice**
                      **That the Lowdens' Mere Presence in the Funeral Procession**
                      **Would Be Reasonably Perceived As "Adversely Affecting" It.**

      The vagueness doctrine protects three "important values," *Grayned*, 408 U.S. at 108, all
of which point to the conclusion that M.C.L. § 750.167d is unconstitutionally vague as applied in

---

      [17] *See* Argument III, *supra*.

this case. First, the statute lacks "sufficient definiteness [so] that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Ordinary people would not understand a law against "adversely affecting" funerals to prohibit close friends of the deceased from driving peacefully in a funeral procession simply because homemade political signs are taped to the inside windows of their car.

Second, the statute lacks "reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement." *Smith v. Goguen*, 415 U.S. 566, 573 (1974) (internal quotation marks omitted). The risk of arbitrary and discriminatory enforcement is manifest, for the term "adversely affect" authorized and even encouraged Deputies Kahsin and Woodcock to arrest persons whose otherwise innocent conduct *they* think adversely affects a funeral.

Third, because the statute "abuts upon sensitive areas of basic First Amendment freedoms" and thereby "operates to inhibit the exercise of those freedoms," *Grayned*, 408 U.S. at 109, a "more stringent vagueness test should apply," *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). Here, the vagueness of the "adversely affects" provision directly impacted the Lowdens' freedom of speech and inhibited the exercise of that freedom.

### 2. The Deputies Are Not Entitled to Qualified Immunity Because the Lowdens' Due Process Rights in This Situation Were Clearly Established.

Defendants make no argument that M.C.L. § 750.167d should survive Plaintiffs' vagueness challenge, either on its face or as applied. Instead, they argue that Kahsin and Woodcock are entitled to qualified immunity because of "special dilemmas" that "arise from an officer's duty to enforce the law under these circumstances." (Defs.' Br. at 19.) They argue that the deputies should be granted qualified immunity because they were entitled to presume that M.C.L. § 750.167d was constitutional.

25

Defendants expect too much of the qualified immunity doctrine.  If an individual officer were entitled to qualified immunity on a vagueness-as-applied claim simply because no court had previously ruled that particular statute unconstitutionally vague as applied to those particular circumstances, qualified immunity would entirely swallow 42 U.S.C. § 1983.  That is not the rule.  *See Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir. 1996) (denying qualified immunity in vagueness-as-applied challenge).

Vagueness-as-applied necessarily requires the court to examine whether, in the particular case before it, the challenged statute failed to give a person of ordinary intelligence fair notice that his contemplated conduct was forbidden.  *Palmer*, 402 U.S. at 545.  Qualified immunity simply asks whether a reasonable officer, in that same situation and given the state of the law at that time, would know that the statute could not be validly enforced in those circumstances.  In fact, the qualified immunity inquiry "turns on whether reasonable officers could disagree about *whether* [their] conduct is illegal, not on whether they know the precise constitutional reason *why* it is not lawful." *Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d Cir. 2007).

In this case, that standard is met.  The meaning and contours of the void-for-vagueness doctrine are clearly established.  See *Palmer*, 402 U.S. at 545; *Salisbury*, 983 F.2d at 1378.  Although M.C.L. § 750.167d has not been ruled unconstitutionally vague by any court, the vagueness doctrine is sufficiently clear such that no reasonable officer could conclude that the statute gave the Lowdens fair notice that their conduct was forbidden.  *See Leonard v. Robinson*, 477 F.3d 347, 359 (6th Cir. 2007) ("[V]iewing the facts in the light most favorable to the plaintiff, no reasonable police officer would believe that any of the . . . Michigan statutes relied upon . . . are constitutional *as applied* . . . ." (emphasis added)).  Consequently, qualified immunity should be denied on Plaintiffs' as-applied vagueness claim.

## <u>CONCLUSION</u>

For the reasons stated above, Defendants' motion should be denied.

Respectfully submitted,

/s/ Daniel S. Korobkin
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P48085)
Kary L. Moss (P49759)
American Civil Liberties Union Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org
msteinberg@aclumich.org

/s/ Hugh M. Davis with consent
Hugh M. Davis (P12555)
Cynthia Heenan (P53664)
Constitutional Litigation Associates, P.C.
450 W. Fort St., Ste. 200
Detroit, MI 48226
(313) 961-2255
conlitpc@sbcglobal.net

Attorneys for Plaintiffs

Dated: August 20, 2009

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 20, 2009, I electronically filed the foregoing paper with

the Clerk of the Court using the ECF system which will send notification of such filing to the

following:

| | |
|---|---|
| Michael J. Steinberg | msteinberg@aclumich.org |
| Cynthia Heenan | conlitpc@sbcglobal.net |
| Hugh M. Davis | conlitpc@sbcglobal.net |
| Patrick A. Aseltyne | paseltyne@jrlaf.com |
| Jason D. Kolkema | jkolkema@jrlaf.com |

/s/ Daniel S. Korobkin
Daniel S. Korobkin (P72824)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org