UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LEWIS LOWDEN, ROBERT
LOWDEN, *personal representative*
*of the estate of Jean Lowden*,

        Plaintiffs,

                                  Case Number 09-11209-BC
v.                                  Honorable Thomas L. Ludington

COUNTY OF CLARE, LAWRENCE
KAHSIN, CALVIN WOODSTOCK,

        Defendants.
_____/

## OPINION AND ORDER REGARDING DECLARATORY RELIEF

Lewis and Jean Lowden sought to attend the funeral for their deceased friend, Corporal Todd Motley, on September 26, 2007. The Lowdens were included in the procession and had a funeral flag identifying the vehicle as a part of the ceremonial travel to the cemetery. The Lowdens were detained by county sheriff deputies, arrested, and jailed for twenty-four hours because the van that they were driving in contained political information, mostly critical of then-U.S. President George W. Bush. The sheriff deputies initiated the arrest based on the Michigan funeral protest statute, Mich. Comp. Laws § 750.167d.[1]

Plaintiffs Lewis Lowden and Robert Lowden[2] ("Plaintiffs") filed the instant complaint against Defendants Clare County ("the County"), and Sheriff Deputies Lawrence Kahsin and Calvin Woodcock ("Deputies Kahsin and Woodcock") contending, among other things, that the Michigan funeral protest statute that was the basis for their arrest is unconstitutionally vague and furnished

---

[1] For additional factual background, *see* [Dkt. # 52]; *Lowden v. County of Clare*, No. 09-11209, - - - F. Supp. 2d - - - -, 2010 WL 1254591, at *5-6 (E.D. Mich. Mar. 26, 2010).

[2] Plaintiff Robert Lowden is the personal representative of the estate of Jean Lowden.

inadequate direction to law enforcement under the Fourteenth Amendment to the U.S. Constitution. They also contend that the statute is unconstitutionally overbroad because the statute limits communication that is protected by the First Amendment to the U.S. Constitution. Plaintiffs contend that the statute fails to satisfy both constitutional provisions "on its face" and in the manner in which Defendants applied the statute in deciding to arrest the Lowdens. Few would dispute the State's interest in protecting the privacy of attendees at a fallen soldier's funeral, but likewise, few would dispute that "the First Amendment recognizes . . . that a certain amount of expressive disorder not only is inevitable in a society committed to individual freedom, but must itself be protected if that freedom would survive." *City of Houston v. Hill*, 482 U.S. 451, 472 (1987).

On January 29, 2010, Michigan Attorney General Michael Cox intervened in the case pursuant to 28 U.S.C. § 2403(b) to defend the constitutionality of the Michigan statute. The statute provides in full:

> (1) A person shall not do any of the following within 500 feet of a building or other location where a funeral, memorial service, or viewing of a deceased person is being conducted or within 500 feet of a funeral procession or burial:
>
> (a) Make loud and raucous noise and continue to do so after being asked to stop.
>
> (b) Make any statement or gesture that would make a reasonable person under the circumstances feel intimidated, threatened, or harassed.
>
> (c) Engage in any other conduct that the person knows or should reasonably know will disturb, disrupt, or adversely affect the funeral, memorial service, viewing of the deceased person, funeral procession, or burial.
>
> (2) A person who violates subsection (1) is a disorderly person and is guilty of a felony punishable as provided under section 168.

Mich. Comp. Laws § 750.167d. A violation of the statute is punishable by up to two years' imprisonment. Mich. Comp. Laws § 750.168. Plaintiffs' claims specifically focus on the "adversely affect" language of the statute, the statute's application to an area within 500 feet of a funeral or

related event, and the statute's application to funeral processions.

Plaintiffs' complaint alleges four causes of action pursuant to 42 U.S.C. § 1983, including: (1) violations of the First Amendment based on overbreadth; (2) violations of the Due Process Clause of the Fourteenth Amendment based on vagueness; (3) violations of the Fourth Amendment; and (4) municipal liability for violations of the First, Fourth, and Fourteenth Amendments. Plaintiffs seek a declaration that the Lowdens' First, Fourth, and Fourteenth Amendment rights were violated by Defendants; a declaration that the Michigan funeral protest statute is unconstitutional on its face; compensatory damages for, inter alia, attorney's fees incurred to defend criminal charges and fees to recover the Lowdens' van from an impound lot; and costs and attorney's fees pursuant to 42 U.S.C. § 1988.

On March 26, 2010, the Court addressed three dispositive motions: (1) Deputies Kahsin and Woodcock and the County's motion to dismiss or for judgment on the pleadings; (2) Plaintiffs' motion for partial judgment on the pleadings; and (3) the Attorney General's motion for summary judgment. The Court concluded that the County was not entitled to dismissal of Plaintiffs' claims against it because Plaintiffs plead sufficient facts to plausibly suggest an actionable municipal policy. The Court also determined that Deputies Kahsin and Woodcock were not entitled to qualified immunity on Plaintiffs' Fourth Amendment cause of action or as-applied First and Fourteenth Amendment causes of action because Defendants' conduct, as alleged by Plaintiffs in the complaint, establishes violations of Plaintiffs' clearly established constitutional rights. On the other hand, the Court found that Deputies Kahsin and Woodcock were entitled to qualified immunity on Plaintiffs' First and Fourteenth Amendment facial challenges to the Michigan funeral protest statute because it was not clearly established that the statute on its face is unconstitutional, if it is

-3-

in fact unconstitutional.

While the Court has not found that the statute is unconstitutional, the qualified immunity analysis of Plaintiffs' facial challenges suggests that there is at least a fair probability that the statute is unconstitutional as to the "adversely affect" language of the statute, its application to an area within 500 feet of a funeral or related event, and its application to funeral processions. In light of the fact that Deputies Kahsin and Woodcock were entitled to qualified immunity as to Plaintiffs' facial challenges to the statute, the Court requested supplemental briefing as to the propriety of the Court entertaining Plaintiffs' request for declaratory relief.

As noted earlier, Plaintiffs contend that this Court should declare that the Michigan funeral protest statute is invalid under both the overbreadth doctrine of the First Amendment and the void for vagueness doctrine of the Due Process Clause of the Fourteenth Amendment. Plaintiffs assert that the Court's authority to enter declaratory relief derives from the Declaratory Judgment Act, 28 U.S.C. § 2201(a): "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Generally, Plaintiffs contend that the Court should exercise its discretion to provide declaratory relief because doing so would "serve a useful purpose in clarifying the legal relations at issue" by "putting the public on notice" that a given practice or statute is unconstitutional. *Hanas v. Inner City Christian Outreach, Inc.*, 542 F. Supp. 2d 683, 693 (E.D. Mich. 2008).

In contrast, the Attorney General emphasizes that, "[c]laims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records." *Phelps-Roper v. Strickland*, 539 F.3d 356, 361 (6th Cir. 2008)

(citations omitted). Facial challenges also "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id.* (citation and quotation omitted). Too, "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* Finally, it is not insignificant that the state courts have not had an opportunity to adopt a construction that would narrow the Michigan statute in a way that would avoid constitutional problems.

Plaintiffs' and the Attorney General's supplemental briefs focus on two distinct questions. First, the parties' briefs address whether the Court should exercise its discretion under the Declaratory Judgment Act. Second, the parties' briefs address whether the Court should abstain from addressing Plaintiffs' facial challenges under either the *Pullman* or *Burford* doctrines. *See Steffel v. Thompson*, 415 U.S. 452, 474 n.21 (1974) (noting that "[a]bstention [is] a question entirely separate from the question of granting declaratory relief").

I

Plaintiffs assert that declaratory relief is proper in this case because Congress intended that the Declaratory Judgment Act be used to challenge the constitutionality of state criminal statutes. Plaintiffs contrast declaratory judgments with injunctions by emphasizing that declaratory judgments are less intrusive of state authority than injunctions, and therefore do not implicate federalism concerns to the same extent as injunctions. Moreover, in this case, federalism concerns are lessened further because no case is pending before a state court and declaratory relief will not prevent Michigan courts from interpreting the Michigan funeral protest statute in the future.

Plaintiffs rely primarily on *Steffel*, 415 U.S. 452, to support their position that addressing the request for declaratory relief is proper under the circumstances of this case. As characterized by the Court itself, *Steffel* addressed "whether declaratory relief is precluded when a state prosecution has been threatened, but is not pending, and a showing of bad-faith enforcement or other special circumstances has not been made." *Id.* at 454. The petitioner's complaint requested a declaratory judgment pursuant to the Declaratory Judgment Act, determining that a Georgia trespassing law was being applied in violation of his First and Fourteenth Amendment rights. *Id.* at 454-55. On two occasions, the petitioner sought to distribute handbills at a shopping center, protesting American involvement in Vietnam and Southeast Asia, and was told by police officers that he would be arrested if he did not stop. *Id.* at 455. The petitioner stopped on both occasions, but on the second occasion, a companion did not stop handbilling and was arrested. *Id.*

On a petition for writ of certiori appealing the lower courts' denial of declaratory relief, the Court first addressed whether there was an "actual controversy" within the meaning of Article III of the U.S. Constitution and the Declaratory Judgment Act. The Court noted that the warnings issued against the petitioner and the actual arrest of his companion were "ample demonstration that petitioner's concern with arrest has not been 'chimerical.' " *Id.* at 458-59 (quoting *Poe v. Ullman*, 367 U.S. 497, 508 (1961)). The Court also noted that "petitioner's challenge is to those specific provisions of state law which have provided the basis for threats of criminal prosecution against him." *Id.* at 459. Nonetheless, the Court found that the district court, on remand, would need to determine if "the recent developments reducing the Nation's involvement in [Vietnam and Southeast Asia] . . . have so altered petitioner's desire to engage in handbilling at the shopping center that it can no longer be said that this case presents 'a substantial controversy between parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Id.* at 460.

Next, the Court addressed "the question of whether the District Court and the Court of Appeals correctly found petitioner's request for declaratory relief inappropriate." *Id.* The Court briefly reviewed two cases. First, in *Younger v. Harris*, 401 U.S. 37 (1971), the Court recognized that "federal courts should ordinarily refrain from enjoining ongoing state criminal prosecutions" because a state proceeding provides a "vehicle for vindicating . . . constitutional rights" when state courts have the same duty as federal courts to enforce rights protected by the U.S. Constitution. *Steffel*, 415 U.S. at 460-61. Second, in *Samuels v. Mackell*, 401 U.S. 66 (1971), the Court emphasized that "the intrusive effect of declaratory relief 'will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid,' " and therefore "the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment." *Steffel*, 415 U.S. at 461.

The Court went on to explain that "[n]either Younger nor Samuels . . . decided the question whether federal intervention might be permissible in the absence of a pending state prosecution." *Id.* The Court highlighted that "the relevant principles of equity, comity, and federalism 'have little force in the absence of a pending state proceeding.' " *Id.* at 462 (quoting *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 509 (1972)). This is because "federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can [it] be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles." *Id.* The Court even went so far as to suggest that "a refusal on the part of the federal courts to

intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Id.* (citing *Dombrowski v. Pfister*, 380 U.S. 479, 490 (1965)).

The Court further noted that declaratory relief "is a less harsh and abrasive remedy than an the injunction." *Id.* at 463 (quoting *Perez v. Ledesma*, 401 U.S. 82, 104 (1971) (separate opinion of Brennan, J.)). In addition, when Congress enacted the Declaratory Judgment Act in 1934, it "plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction and to be utilized to test the constitutionality of state criminal statutes in cases where injunctive relief would be unavailable." *Id.* at 466 (citing *Perez*, 401 U.S. at 111-115 (separate opinion of Brennan, J., discussing legislative history)). In *Perez*, Justice Brennan explained:

> Of course, a favorable declaratory judgment may nevertheless be valuable to the plaintiff though it cannot make even an unconstitutional state statute disappear. A state statute may be declared unconstitutional in toto - that is, incapable of having constitutional applications; or it may be declared unconstitutionally vague or overbroad - that is, incapable of being constitutionally applied to the full extent of its purport. In either case, a federal declaration of unconstitutionality reflects the opinion of the federal court that the statute cannot be fully enforced. If a declaration of total unconstitutionality is affirmed by this Court, it follows that this Court stands ready to reverse any conviction under the statute. If a declaration of partial unconstitutionality is affirmed by this Court, the implication is that this Court will overturn particular applications of the statute, but that if the statute is narrowly construed by the state courts it will not be incapable of constitutional applications. Accordingly, the declaration does not necessarily bar prosecutions under the statute, as a broad injunction would. Thus, where the highest court of a State has had an opportunity to give a statute regulating expression a narrowing or clarifying construction but has failed to do so, and later a federal court declares the statute unconstitutionally vague or overbroad, it may well be open to a state prosecutor, after the federal court decision, to bring a prosecution under the statute if he reasonably believes that the defendant's conduct is not constitutionally protected and that the state courts may give the statute a construction so as to yield a constitutionally valid conviction. Even where a declaration of unconstitutionality is not reviewed by this Court, the declaration may still be able to cut down the deterrent effect of an unconstitutional state statute. The persuasive force of the court's opinion and judgment may lead state prosecutors, courts, and legislators to reconsider their respective responsibilities toward the

statute. Enforcement policies or judicial construction may be changed, or the legislature may repeal the statute and start anew. Finally, the federal court judgment may have some res judicata effect, though this point is not free from difficulty and the governing rules remain to be developed with a view to the proper workings of a federal system.

*Steffel*, 415 U.S. at 469-70 (quoting *Perez*, 401 U.S. at 124-26 (separate opinion of Brennan, J.)).

Ultimately, the Court found that "[i]n the instant case, principles of federalism not only do not preclude federal intervention, they compel it. Requiring federal courts totally to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head." *Id.* at 472. The Court explained that exhaustion of state remedies is not required to pursue claims under 42 U.S.C. § 1983, but that is "precisely what would be required if both federal injunctive and declaratory relief were unavailable in a case where no state prosecution had been commenced." *Id.* at 473.

The Attorney General advances *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985), to argue that this Court should not invalidate the Michigan funeral protest statute in its entirety. In *Brockett*, the Court found that "the Ninth Circuit erred in invalidating in its entirety a Washington statute aimed at preventing and punishing the publication of obscene materials." *Id.* at 493. In part, the statute placed restrictions on "lewd films" and "lewd publications." *Id.* "Lewd matter" was defined to mean any matter "[w]hich the average person . . . would find . . . appeals to the prurient interest." *Id.* In turn, the word "prurient" was defined to mean "that which incites lasciviousness or lust." *Id.* at 494. The Ninth Circuit found that "by including 'lust' in its definition of 'prurient,' the Washington state legislature had intended the statute to reach material that merely stimulated normal sexual responses, material that it considered to be constitutionally protected." *Id.* at 495. The court of appeals held that a facial challenge was "appropriate despite the fact that the law had not yet been authoritatively interpreted or enforced," particularly in light of the potential "chilling

effect on protected expression." *Id.* at 495.

The Supreme Court found that "the Washington law should have been invalidated only insofar as the word 'lust' is to be understood as reaching protected materials." *Id.* at 504. The Court was "unconvinced that the identified overbreadth is incurable and would taint all possible applications of the statute." *Id.* The Court explained that "[i]f, as we have held, prurience may be constitutionally defined for the purposes of identifying obscenity as that which appeals to a shameful or morbid interest in sex, *Roth v. United States*, 354 U.S. 476 (1957), it is equally certain that if the statute at issue here is invalidated only insofar as the word 'lust' is taken to include normal interest in sex, the statute would pass constitutional muster and would validly reach the whole range of obscene publications." *Id.* at 504-05. In addition, "had the Court of Appeals thought that 'lust' refers *only* to normal sexual appetites, it could have excised the word from the statute entirely, since the statutory definition of prurience referred to 'lasciviousness' as well as 'lust.'" *Id.* at 505. The Court did however recognize that "[p]artial invalidation would be improper if it were contrary to legislative intent in the sense that the legislature passed an inseverable Act or would not have passed it had it known the challenged provision was invalid." *Id.* at 506.

Underlying the *Brockett* decision were two "cardinal rules governing the federal courts." *Id.* at 501. First, a federal court should "never anticipate a question of constitutional law in advance of the necessity of deciding it." *Id.* (quotation omitted). Second, a federal court should "never . . . formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id.* (quotation omitted). Similarly, the Court recognized the general rule that an individual to whom a statute constitutionally applies cannot challenge a statute simply because it "might also be taken as applying to other persons or other situations in which its application might

be unconstitutional." *Id.* at 502 (quoting *United States v. Raines*, 362 U.S. 17, 21 (1960)). Furthermore, "the same statute may be in part constitutional and in part unconstitutional, and . . . if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected." *Id.* (quoting *Allen v. Louisiana*, 103 U.S. 80, 83-84 (1881)).

Although the First Amendment was implicated by the case before it, the Court found that "the rule that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it" was applicable. *Id.* The Court recognized that when "overbreadth is 'substantial,' the law may not be enforced against anyone, including the party before the court, until it is narrowed to reach only unprotected activity, whether by legislative action or by judicial construction or partial invalidation." *Id.* at 503-04 (citing *Broadrick v. Oklahoma*, 413 U.S. 601 (1973)). That principle is significant when "an individual whose own speech or expressive conduct may validly be prohibited or sanctioned" and allows such an individual to "challenge a statute on its face because it also threatens others not before the court - those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law invalidated." *Id.* at 503. In contrast, when "the parties challenging the statute are those who desire to engage in protected speech that the overbroad statute purports to punish . . . there is no concern that an attack on the statute will be unduly delayed or protected speech discouraged." *Id.* at 504. Thus, the statute may "be declared invalid to the extent that it reaches too far, but otherwise left intact." *Id.*

The Attorney General also advances a five-factor test enunciated in *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984), to argue that this Court, in the exercise of

its discretion, should decide not to entertain Plaintiffs' request for declaratory relief. In *Grand Trunk*, the Sixth Circuit began with the proposition that two general principles apply to determine whether declaratory relief is appropriate. *Id.* at 326 (citing E. Borchard, Declaratory Judgments 299 (2d ed. 1941)) (further citations omitted). The first principle is whether a declaratory judgment "will serve a useful purpose in clarifying and settling the legal relations in issue." *Id.* (quotation omitted). The second principle is whether it will "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (quotations omitted). "[W]hen neither of these results can be accomplished, the court should decline to render the declaration prayed." *Id.*

The Sixth Circuit further explained that the following "factors" are considered:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* (citations omitted). In applying the factors to the case before it, the Sixth Circuit found that a declaratory judgment was inappropriate:

> The instant action does not involve an independent dispute because it arises from and affects a pending Illinois lawsuit. It would not clear up the legal issues in that case. Plaintiff Grand Trunk simply seeks to obtain in this lawsuit a judgment that overturns Judge Sullivan's earlier order regarding Grand Trunk's indemnity claim. The case would continue in the Illinois court, and the effect of our ruling on that proceeding is unclear.
>
> . . . Grand Trunk's request for declaratory relief is an attempt to have the federal courts do what the state court has already refused to do. As such, Grand Trunk's request for declaratory relief is not only an impermissible attempt to race with Conrail to obtain a favorable judgment, but also will create unnecessary friction between federal and state courts.
>
> . . . If Judge Sullivan erred in his indemnity ruling, Grand Trunk can appeal his ruling. Grand Trunk has never attempted to have Judge Sullivan certify the question of indemnification to an Illinois appellate court under Supreme Court Rule 304, the normal

avenue of interlocutory review.

*Id.* at 326-27. *See also Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) ("We have repeatedly held in insurance coverage diversity cases that declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.") (quotation omitted).

With respect to the first two factors, "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). Here, the Attorney General asserts that a declaratory judgment will not "settle the controversy," because "the overbreadth/vagueness facial challenge to the State's funeral statute cover a myriad of hypothetical facts that are themselves broad and abstract, [and] the requested relief does not address the actual controversy presented in this case." Plaintiffs suggest that application of such logic would mean that a facial challenge could never "settle the controversy" presented in a case.

The Attorney General further asserts that it is significant that "any declaratory judgment entered on this claim would have little or [sic] effect outside the context of the case" because it will have limited precedential value and does not bind state actors. The Attorney General also emphasizes that a declaratory judgment will not impact Plaintiffs' remaining claims – their *Monell* claims against the County and as-applied claims against Deputies Kahsin and Woodcock.

In contrast, Plaintiffs contend that this controversy will be settled by a declaratory judgment, particularly when there is no parallel proceeding in state court. *See Scottsdale v. Flowers*, 513 F.3d at 555-56 (suggesting that a controversy is not considered settled when a relatively narrow issue presented to a federal court for declaratory relief can be considered in a broader, pending state court

action between the parties). Plaintiffs also suggest that declaratory relief will serve the useful purpose of clarifying the constitutional rights at issue.

In light of the fact that there is no state court action pending in which the questions regarding the facial constitutionality of the Michigan statute could be addressed, Plaintiffs' position as to the first two factors is persuasive. The action before this Court encompasses the entire controversy between the parties. Moreover, in *Scottsdale v. Flowers*, the Sixth Circuit resolved a "split" in its precedent, and found that "the district court's decision must only clarify the legal relations presented in the declaratory judgment action" and need not "also clarify the legal relations in the underlying state action." 513 F.3d at 557. The Sixth Circuit explained that "[t]he requirement that the judgment clarify the legal relationships of the parties is based upon our desire for the declaratory judgment to provide a final resolution of the discrete dispute presented." *Id.* The court implied that it is problematic if declaratory relief granted by the federal court could "create any confusion about the resolution of . . . issues" presented in the state court action. *Id. See, e.g.*, *Bituminous Cas. Corp.*, 373 F.3d at 813-14 (finding that the first two factors weighed against granting declaratory relief when the issue presented in the declaratory action in federal court was already being addressed in two state court actions and would not be binding on a particular party to the state court actions that was not a party to the federal action).

Moving on to the third factor, the Attorney General concedes that this factor weighs in favor of, or at least not against, granting declaratory relief, because Plaintiffs are not using this action for purposes of "procedural fencing."

With respect to the fourth factor, "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction,"

Plaintiffs and the Attorney General acknowledge that there are three "subfactors" to consider:

1. [W]hether the underlying factual issues are important to an informed resolution of the case;

2. [W]hether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

3. [W]hether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000). Consideration of these subfactors is necessary, because "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Scottsdale v. Flowers*, 513 F.3d at 560. A primary focus of these factors is whether "resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id. See also Bogaert v. Land*, 675 F. Supp. 2d 742, 748 (W.D. Mich. 2009) (noting without explanation that "a federal court's ruling on the constitutionality of a state law does not create the kind of friction between the state and federal systems that courts should avoid.").

Here, the Attorney General acknowledges that "[t]he underlying factual issues specific to this case are not important to a resolution of the declaratory judgment action because the facial challenge would be resolved here without application of a specific set of facts." Rather, the Attorney General argues simply that the better course of action is to allow Michigan courts to construe, and to potentially clarify and narrow, the Michigan statute as specific sets of facts are presented to those courts. The Attorney General also suggests that this action implicates matters of public policy and issues of significant state interest.

While a state court is in a better position to "narrow" the Michigan statute, whether a Michigan court will actually find ground to do so is speculative when no state case is pending. *See*

-15-

*Hill*, 482 U.S. at 469 (noting that the fact that "the state courts have not had an opportunity to construe the statute" is "not in itself . . . controlling"); *Scottsdale v. Roumph*, 211 F.3d at 969 (noting that "when an undetermined question of state law is presented, . . . it is an appropriate consideration for the court to weigh in the exercise of its discretion," but has "less force . . . when the state court is not considering the issues"). In addition, a Michigan court is not necessarily in a "better position" to decide the important federal constitutional questions, despite the fact that Michigan courts may do so.

Finally, as to the fifth factor, the Attorney General suggests that Plaintiffs have an "alternative remedy" available because they can pursue their as-applied claims or could file a declaratory judgment action in a Michigan court. Notably, the Attorney General does not explain why these alternatives are "better or more effective." As Plaintiffs suggest, it is not apparent how an action in state court is "better or more effective" given the federal constitutional questions raised by Plaintiffs' claims.

Based on the above, it is appropriate for this Court to entertain Plaintiffs' request for declaratory relief. What remains to be clarified, however, is the precise scope of the declaratory relief. According to the complaint, Plaintiffs seek "a declaration that Michigan's funeral protest law is unconstitutional on its face and as applied." Compl. ¶ 5. More specifically, Plaintiffs request that the Court "declare that the Lowdens' rights under the First, Fourth, and Fourteenth Amendments were violated by Defendants" and "declare M.C.L. § 750.167d unconstitutional on its face." At this juncture, Plaintiffs have not proposed specific language to be used by the Court in granting declaratory relief as to Plaintiffs' facial challenges.

Importantly, to the extent that invalidation of the Michigan funeral protest statute is

appropriate, the statute should only be invalidated to the extent necessary. It does not appear that the statute should be invalidated in its entirety. For example, the Court could potentially strike the "adversely affects" language, which is clearly implicated by both Plaintiffs' overbreadth and vagueness claims. Yet, if the Court does so, it is questionable whether it is also necessary for the Court to address the 500 foot "floating" buffer zone around funeral processions, or the size of the zone generally, which are issues implicated by Plaintiffs' overbreadth claims, but not their vagueness claims. While the facts alleged in Plaintiffs' complaint provide some context to address Plaintiffs' facial challenges, the facts developed through litigation of Plaintiffs' as-applied claims will likely inform on Plaintiffs' facial challenges. Therefore, it is prudent to allow the case to proceed further before determining the precise scope of declaratory relief to be granted.

II

Next, the Attorney General argues that the Court should abstain from considering the constitutionality of the Michigan funeral protest statute under the *Pullman* doctrine. Pursuant to the *Pullman* doctrine, "federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them." *Harrison v. N.A.A.C.P.*, 360 U.S. 167, 176 (1959) (citing, inter alia, *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)). Such abstention "serves the policy of comity inherent in the doctrine of abstention; and it spares the federal courts of unnecessary constitutional adjudication." *Id.* at 177 (citation omitted).

In *City of Houston v. Hill*, the City of Houston argued that the Court should abstain from reaching the merits of the plaintiff's constitutional challenge to its ordinance based on the *Pullman* doctrine on the ground that "there are certain limiting instructions readily available to the state

courts that would eliminate the ordinance's overbreadth."  482 U.S. at 467.  The Court acknowledged that "[a]bstention is, of course, the exception and not the rule, and we have been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment." *Id.*  "We have held that abstention is inappropriate for cases where statutes are justifiably attacked on their face as abridging free expression."  *Id.* (quotation omitted).

The Court noted that "[e]ven if this case did not involve a facial challenge under the First Amendment, we would find abstention inappropriate."  *Id.* at 468.  "In cases involving a facial challenge to a statute, the pivotal question in determining whether abstention is appropriate is whether the statute is 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question.' "  *Id.* (quoting *Harman v. Forssenius*, 380 U.S. 528, 534-535 (1965)) (further citations omitted).  "If the statute is not obviously susceptible of a limiting construction, then even if the statute has 'never [been] interpreted by a state tribunal . . . it is the duty of the federal court to exercise its properly invoked jurisdiction.' "  *Id.* (quoting *Harman*, 380 U.S. at 535) (further citations omitted).  In contrast, "[w]here there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim."  *Id.* (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971)) (further citations omitted).  A statute is not ambiguous when whether or not it is constitutional "turn[s] upon a choice between one or several alternative meanings."  *Id.* (quoting *Baggett v. Bullitt*, 377 U.S. 360, 378 (1964)) (further citations omitted).

The Court also found that the ordinance before it could not "be limited by severing discrete unconstitutional subsections from the rest.  For example, it cannot be limited to 'core criminal conduct' such as physical assaults or fighting words because those applications are pre-empted by

-18-

state law." *Id.* (citation omitted). In other words, "[t]he enforceable portion of this ordinance is a general prohibition of speech that 'simply has no core' of constitutionally unprotected expression to which it might be limited." *Id.* at 468-69 (quoting *Smith v. Goguen*, 415 U.S. 566, 578 (1974)). The Court concluded that "[t]he city's proposed constructions are insufficient, and it is doubtful that even 'a remarkable job of plastic surgery upon the face of the ordinance' could save it." *Id.* at 469 (quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 153 (1969)).

The Attorney General asserts that the Michigan funeral protest statute is susceptible to a narrowing construction, but does not suggest precisely what the narrowing construction would reasonably be. Based on this possibility, the Attorney General asserts that this Court should abstain from addressing the constitutionality of the statute on its face.

In contrast, Plaintiffs emphasize the fact that the statute has an ongoing effect on Plaintiff Lewis Lowden's First and Fourteenth Amendment rights. *See* L. Lowden Aff. ¶ 16 (attesting that "[s]ince I am of an age where . . . I will sadly be required to go to the funerals of family, friends, neighbors and old military buddies, I will not have political signs on my vehicle about any topic because of the consequences of some mistaken perception by some officer are too frightening"); Pls. Supp. Br. Ex. 1. *See also Hill* 482 U.S. at 474 n.21 (noting that abstention "might be more appropriate when a challenge is made to the state statute as applied, rather than upon its face, since the reach of an uncertain state statute might, in that circumstance, be more susceptible of a limiting or clarifying construction that would avoid the federal constitutional question"). Based on the potential chilling effect on constitutionally protected speech, because of both overbreadth and vagueness, *Pullman* abstention is not appropriate.

The Attorney General also briefly contends that the Court should abstain under the *Burford*

doctrine. Under *Burford*, a federal court may abstain from hearing a case "only if it presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996) (quotations omitted). In reply, Plaintiffs assert that *Burford* abstention is limited to situations where state administrative agencies are involved. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (referring to "state administrative agencies" in its formulation of the rule).

Even if *Burford* abstention is not quite so limited as Plaintiffs suggest, it is not apparent how it would be appropriate in the circumstances presented by this case. While the Attorney General asserts that "the consequences of declaratory relief in this case would extend far beyond the facts of this case," Atty Gen. Br. 12, this statement directly contradicts its earlier statement in the same brief that "any declaratory judgment entered on this claim would have little or [sic] effect outside the context of this case," *id.* 3. In addition, since this case implicates a single law, and not a complex regulatory scheme, a decision in this case will not "be disruptive of state efforts to establish a coherent policy." *Burford* abstention is not appropriate, and the Court will exercise discretion to entertain Plaintiffs' request for declaratory relief.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: July 1, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 1, 2010.

s/Tracy A. Jacobs
_____
TRACY A. JACOBS