## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

LEWIS LOWDEN, et al,

       Plaintiffs,

vs.

CLARE COUNTY, et al.,

       Defendants,

BILL SCHUETTE,
Attorney General of the State of Michigan,

       Defendant-Intervenor.

Case No. 1:09-cv-11209

Hon. Thomas L. Ludington

_____/

| For the Plaintiffs: | For the Defendants: |
|---|---|
| Daniel S. Korobkin (P72842) | Patrick D. Aseltyne (P23293) |
| Michael J. Steinberg (P48085) | Jason D. Kolkema (P55936) |
| Kary L. Moss (P49759) | JOHNSON, ROSATI, LABARGE, ASELTYNE |
| AMERICAN CIVIL LIBERTIES UNION | & FIELD, P.C. |
| FUND OF MICHIGAN | 303 S. Waverly Rd. |
| 2966 Woodward Ave. | Lansing, MI 48917 |
| Detroit, MI 48201 | (517) 886-3800 |
| (313) 578-6824 | paseltyne@jrlaf.com |
| dkorobkin@aclumich.org | jkolkema@jrlaf.com |
| msteinberg@aclumich.org | |
| | For the Defendant-Intervenor: |
| Hugh M. Davis (P12555) | |
| Cynthia Heenan (P53664) | Margaret A. Nelson (P30342) |
| CONSTITUTIONAL LITIGATION | Ann M. Sherman (P67762) |
| ASSOCIATES, P.C. | MICHIGAN DEPARTMENT OF |
| 450 W. Fort St., Ste. 200 | ATTORNEY GENERAL |
| Detroit, MI 48226 | P.O. Box 30736 |
| (313) 961-2255 | Lansing, MI 48909 |
| conlitpc@sbcglobal.net | (517) 373-6434 |
| | nelsonm9@michigan.gov |
| | shermana@michigan.gov |

_____/

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs hereby move this Court to enter partial summary judgment on their claims against Defendants Clare County and Lawrence Kahsin.  *See* Fed. R. Civ. P. 56(a).  Plaintiffs are entitled to summary judgment against Clare County because Michigan's funeral protest statute, M.C.L. § 750.167d, is unconstitutional, and the Lowdens were arrested as a result of the County's official policy to enforce it.  Plaintiffs are also entitled to summary judgment against Kahsin because Kahsin applied the statute in a manner that violated the Lowdens' clearly established constitutional rights under the First, Fourth, and Fourteenth Amendments.  Summary judgment may be entered as to liability alone, with the issue of damages set for a jury trial.

In addition, because summary judgment is required against Clare County for enforcing an unconstitutional statute, Plaintiffs request that the Court exercise its discretion at this time to grant their pending motion for a declaratory judgment (Dkt. # 59) and declare the statute unconstitutional.  *See* Fed. R. Civ. P. 57.

Plaintiffs' counsel conferred with Defendants' counsel, explained the nature of this motion and its legal basis, and requested but did not obtain concurrence in the relief sought.

A brief in support of this motion is attached.

Respectfully submitted,

/s/ Daniel S. Korobkin
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P48085)

Hugh M. Davis (P12555)               Kary L. Moss (P49759)
Cynthia Heenan (P53664)              American Civil Liberties Union
Constitutional Litigation               Fund of Michigan
  Associates, P.C.                    2966 Woodward Ave.
450 W. Fort St., Ste. 200            Detroit, MI 48201
Detroit, MI 48226                    (313) 578-6824
(313) 961-2255                       dkorobkin@aclumich.org
conlitpc@sbcglobal.net               msteinberg@aclumich.org

Attorneys for Plaintiffs

Dated:  February 22, 2011

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

LEWIS LOWDEN, et al,

        Plaintiffs,

vs.

CLARE COUNTY, et al.,

        Defendants,

BILL SCHUETTE,
Attorney General of the State of Michigan,

        Defendant-Intervenor.

Case No. 1:09-cv-11209

Hon. Thomas L. Ludington

_____/

For the Plaintiffs:

Daniel S. Korobkin (P72842)
Michael J. Steinberg (P48085)
Kary L. Moss (P49759)
AMERICAN CIVIL LIBERTIES UNION
  FUND OF MICHIGAN
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org
msteinberg@aclumich.org

Hugh M. Davis (P12555)
Cynthia Heenan (P53664)
CONSTITUTIONAL LITIGATION
  ASSOCIATES, P.C.
450 W. Fort St., Ste. 200
Detroit, MI 48226
(313) 961-2255
conlitpc@sbcglobal.net

For the Defendants:

Patrick D. Aseltyne (P23293)
Jason D. Kolkema (P55936)
JOHNSON, ROSATI, LABARGE, ASELTYNE
  & FIELD, P.C.
303 S. Waverly Rd.
Lansing, MI 48917
(517) 886-3800
paseltyne@jrlaf.com
jkolkema@jrlaf.com

For the Defendant-Intervenor:

Margaret A. Nelson (P30342)
Ann M. Sherman (P67762)
MICHIGAN DEPARTMENT OF
  ATTORNEY GENERAL
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434
nelsonm9@michigan.gov
shermana@michigan.gov

_____/

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iv

INTRODUCTION ............................................................................ 1

PROCEDURAL HISTORY ................................................................ 2

FACTS ........................................................................................ 3

SUMMARY-JUDGMENT STANDARD ............................................... 6

ARGUMENT .................................................................................. 7

    I.    PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT
        AGAINST CLARE COUNTY BECAUSE THE FUNERAL PROTEST
        STATUTE IS UNCONSTITUTIONAL AND THE COUNTY'S POLICY
        TO ENFORCE IT WAS A MOVING FORCE BEHIND THE LOWDENS'
        ARREST. ................................................................................ 7

        A.    The Lowdens' Constitutional Rights Were Violated Because They
            Were Arrested For Violating the Funeral Protest Statute, Which Is
            Unconstitutional On Its Face. ............................................... 8

        B.    Clare County's Policy To Enforce the Funeral Protest Statute Was a
            Moving Force Behind the Lowdens' Arrest. .......................... 9

            1.    It Was Clare County's Official Policy To Enforce the
                Funeral Protest Statute. ............................................ 10

            2.    The County's Policy Was a Moving Force Behind the
                Lowdens' Arrest. ...................................................... 12

    II.    PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT
        AGAINST DEFENDANT KAHSIN BECAUSE HE VIOLATED THE
        LOWDENS' CLEARLY ESTABLISHED FIRST, FOURTH, AND
        FOURTEENTH AMENDMENT RIGHTS. ........................................ 13

        A.    Kahsin Violated the Lowdens' Clearly Established First Amendment
            Rights By Enforcing the Funeral Protest Law Based on the Content of
            Their Speech. .................................................................. 14

        B.    Kahsin Violated the Lowdens' Clearly Established Fourth Amendment
            Rights Because There Was No Reasonable Suspicion or Probable
            Cause To Believe They Were Committing Any Crime. ............... 16

            1.    Kahsin Stopped the Lowdens Without Reasonable Suspicion. .............. 17

ii

2.      Kahsin Arrested the Lowdens Without Probable Cause. ........................18

3.      There Are No Genuine Disputes of Material Fact. ................................19

4.      Qualified Immunity Should Be Denied. ................................................20

C.  Kahsin Violated the Lowdens' Clearly Established Due Process
Rights by Arresting Them for Violating a Statute That Was
Unconstitutionally Vague As Applied to Them. ...............................................20

III.   THE COURT SHOULD ENTER A JUDGMENT DECLARING THE
FUNERAL PROTEST STATUTE UNCONSTITUTIONAL.................................21

CONCLUSION.......................................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................7

*Boos v. Barry*, 485 U.S. 312 (1988) ...........................................................................................14

*Brown v. Texas*, 443 U.S. 47 (1979) ..........................................................................................17

*Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873 (9th Cir. 2002) ...........................................8

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) ..............................................................................17

*Devenpeck v. Alford*, 543 U.S. 146 (2002) ................................................................................18

*Feathers v. Aey*, 319 F.3d 843 (6th Cir. 2003) .........................................................................20

*Frisby v. Schultz*, 487 U.S. 474 (1988) ......................................................................................14

*Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000) ..............................................................20

*Garner v. Memphis Police Dep't*, 8 F.3d 358 (6th Cir. 1993) ...............................................11, 12

*Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009) .........................................................................13

*Hale v. Kart*, 396 F.3d 721 (6th Cir. 2005) ...............................................................................19

*Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) .............................................................18, 21

*Logsdon v. Hains*, 492 F.3d 334 (6th Cir. 2007) .......................................................................14

*Lowden v. County of Clare* ("*Lowden I*"), 709 F. Supp. 2d 540 (E.D. Mich. 2010) ............ *passim*

*Lowden v. County of Clare* ("*Lowden II*"), 709 F. Supp. 2d 569 (E.D. Mich. 2010) ...............3, 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ....................................7

*Meyers v. City of Cincinnati*, 14 F.3d 1115 (6th Cir. 1994) ........................................................10

*Miller v. Sanilac County*, 606 F.3d 240 (6th Cir. 2010) ...............................................................7

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ........................................................7, 10, 11

*Owens v. City of Independence*, 445 U.S. 622 (1980) .................................................................13

*Palmer v. City of Euclid*, 402 U.S. 544 (1971) (per curiam) .......................................................20

*Parsons v. City of Pontiac*, 533 F.3d 492 (6th Cir. 2008) ..........................................................20

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ..................................................................10

*Pillow v. City of Lawrenceburg*, 319 F. App'x 347 (6th Cir. 2008) .............................................16

*Pleasant Grove City v. Summum*, 129 S. Ct. 1125 (2009) ...........................................................14

*Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007) ..................8

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005) .............................................20

*Sandul v. Larion*, 119 F.3d 1250 (6th Cir. 1997) .......................................................................18

*Saucier v. Katz*, 533 U.S. 194 (2001) ........................................................................................13

*Smith v. Goguen*, 415 U.S. 566 (1974) .......................................................................................21

*Swiecicki v. Delgado*, 463 F.3d 489 (6th Cir. 2006)..................................................................18

*Thompson v. Campbell*, 81 F. App'x 563 (6th Cir. 2003) ...........................................................13

*United States v. Arvizu*, 534 U.S. 266 (2002) ...........................................................................17

*United States v. Gross*, 624 F.3d 309 (6th Cir. 2010)................................................................18

*United States v. Keith*, 559 F.3d 499 (6th Cir. 2009)................................................................17

*Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008).............................................................11

*Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187 (6th Cir. 1997).......................................8

**Statutes**

28 U.S.C. § 2201 .....................................................................................................................22

42 U.S.C. § 1983 .......................................................................................................................7

M.C.L. § 750.167d..............................................................................................................1, 7, 19

**Rules**

Fed. R. Civ. P. 56......................................................................................................................6

Fed. R. Civ. P. 57.....................................................................................................................22

**Other Authority**

Wright, Miller & Kane, *Federal Practice and Procedure* (3d ed.) ..................................................7

**INTRODUCTION**

Lewis and Jean Lowden were engaged in completely innocent activity—attending the funeral of a close family friend, Corporal Todd Motley—when they were arrested and taken to jail for allegedly violating Michigan's funeral protest statute, M.C.L. § 750.167d.[1]  Although they were driving in the funeral procession at the invitation of Corporal Motley's family and did nothing to disrupt the procession or funeral, the Lowdens were stopped and arrested solely because the van they were driving happened to display signs critical of then-President Bush and other government officials and policies.

Plaintiffs brought this suit to challenge the constitutionality of the funeral protest statute on its face and as applied.  They now seek partial summary judgment against two of the defendants in this case, Clare County and Sheriff's Deputy Lawrence Kahsin.  Plaintiffs are entitled to summary judgment against Clare County because the funeral protest statute is unconstitutional and the Lowdens were arrested as a result of the County's official policy to

---

[1] The statute provides as follows:

> A person shall not do any of the following within 500 feet of a building or other location where a funeral, memorial service, or viewing of a deceased person is being conducted or within 500 feet of a funeral procession or burial:
>
> (a)  Make loud and raucous noise and continue to do so after being asked to stop.
>
> (b)  Make any statement or gesture that would make a reasonable person under the circumstances feel intimidated, threatened, or harassed.
>
> (c)  Engage in any other conduct that the person knows or should reasonably know will disturb, disrupt, or adversely affect the funeral, memorial service, viewing of the deceased person, funeral procession, or burial.

M.C.L. § 750.167d(1).  Violation of the statute is punishable as a felony.  *Id.* § 750.167d(2).

enforce it.  Plaintiffs are also entitled to summary judgment against Deputy Kahsin because

Kahsin applied the statute in a manner that violated the Lowdens' clearly established

constitutional rights under the First, Fourth, and Fourteenth Amendments.  In addition, because

summary judgment is required against Clare County for enforcing an unconstitutional statute,

Plaintiffs request that the Court exercise its discretion at this time to grant their pending motion

for a declaratory judgment (Dkt. # 59) and declare the statute unconstitutional.

## PROCEDURAL HISTORY

The Court has already made several important rulings in this case on questions of law.

Shortly after this action commenced, Defendants filed a motion for dismissal and judgment on

the pleadings, which the Court denied.  The County, while not defending the constitutionality of

the funeral protest statute, argued that it could not be held liable for enforcing an unconstitutional

state law.  This Court rejected that argument, holding that Plaintiffs could prevail by proving that

the law was facially unconstitutional and the County had a policy of enforcing it.  *Lowden v.*

*County of Clare* ("*Lowden I*"), 709 F. Supp. 2d 540, 566-68 (E.D. Mich. 2010) (Dkt. # 52 at 43-

47).  Meanwhile, the Attorney General intervened to defend the constitutionality of the statute.

The Court rejected the Attorney General's arguments as well, finding that the statute was likely

unconstitutional on its face under the overbreadth doctrine of the First Amendment and the

vagueness doctrine of the Fourteenth Amendment.  *Id*. at 551-65 (Dkt. # 52 at 16-41).

In addition to allowing the case to proceed on Plaintiffs' facial claims against the County,

the Court denied Defendants' motion to dismiss Plaintiffs' as-applied claims against the two

police officers who arrested the Lowdens, Lawrence Kahsin and Calvin Woodcock.  *Id*. at 550-

51, 555, 564-65  (Dkt. # 52 at 15, 23-24, 39-41).  Although the Court concluded that a reasonable

officer might not know that the statute was invalid on its face, the Court held that the manner in which Kahsin applied the law in this case—assuming the facts alleged in the complaint were true—violated the Lowdens' First, Fourth, and Fourteenth Amendment rights under clearly established law.  *Id*. at 550 (Dkt. # 52 at 14-15).

Finally, in a subsequent decision after supplemental briefing, the Court decided that it would exercise its discretion to entertain Plaintiffs' motion for a declaratory judgment on the constitutionality of the funeral protest statute.  *Lowden v. County of Clare* ("*Lowden II*"), 709 F. Supp. 2d 569 (E.D. Mich. 2010) (Dkt. # 58).  Plaintiffs' motion for a declaratory judgment (Dkt. # 59) remains pending.

## FACTS

The rulings described above were made on the pleadings alone.  Although in some cases discovery reveals that a plaintiff's most serious allegations are not supported by the evidence, in this case the exact opposite is true.  Now that discovery is complete, all the material facts alleged in Plaintiffs' complaint are supported by record evidence and are not subject to genuine dispute.

On September 26, 2007, the small town of Harrison, Michigan, was host to a funeral and a funeral procession for Corporal Todd Motley, a soldier from Clare County who had been killed in action in Iraq while serving in the United States Army.  (Am. Compl. and Answer,[2] Ex. A, ¶¶ 18, 21; Lowden Dep., Ex. B, at 18.)  The event was widely publicized in advance, and local law enforcement officials mobilized to provide security and direct traffic.  (Am. Compl. and Answer, Ex. A, ¶ 21; Goyt Dep., Ex. C, at 7, 11-13.)

---

[2] "Am. Compl. and Answer" refers to Plaintiffs' First Amended Complaint (Dkt. # 69), its supporting Declaration of Lewis Lowden (Ex. A), and Defendants' Answer (Dkt. # 76 and Ex. A).

Clare County Sheriff Jeffery Goyt and Clare County Prosecutor Norman Gage were concerned by recent news stories about an unpopular church group from Kansas that staged protests near military funerals.  (Goyt Dep., Ex. C, at 9; Gage Dep., Ex. D, at 13-14.)  They had also recently learned that the Michigan Legislature had enacted a criminal statute to deter such protests.  (Goyt Dep., Ex. C, at 10; Gage Dep., Ex. D, at 13-14.)  They discussed the matter, and Sheriff Goyt asked Prosecutor Gage to locate the statute so it could be provided to the police officers who would be on duty at the funeral and procession.  (Goyt Dep., Ex. C, at 10, 20; Gage Dep., Ex. D, at 14-16.)  Prior to the Motley funeral, Goyt and Gage held a briefing where they distributed copies of the statute.  (Goyt Dep., Ex. C, at 13, Kahsin Dep., Ex. E, at 8-9, 34.)  Deputy Kahsin was at the briefing.  (Kahsin Dep., Ex. E, at 8-11, 34.)

Lewis Lowden and his wife Jean Lowden were devastated by Corporal Motley's death.  (Am. Compl. and Answer, Ex. A, ¶ 19.)  They had known Corporal Motley and his family for many years.  (Am. Compl. and Answer, Ex. A, ¶ 19; Lowden Dep., Ex. B, at 13.)  Jean homeschooled Todd in high school, and Lewis took him on fishing and camping trips in the summer.  (Am. Compl. and Answer, Ex. A, ¶ 19; Lowden Dep., Ex. B, at 13.)  Lewis was himself a U.S. Army veteran, and he had encouraged Todd to serve in the Armed Forces.  (Lowden Dep., Ex. B, at 14.)

Corporal Motley's family invited the Lowdens to attend and to participate in Corporal Motley's funeral service and funeral procession. (Am. Compl. and Answer, Ex. A, ¶ 20; Lowden Dep., Ex. B, at 15.)  The procession through downtown Harrison was a heavily attended event.  (Am. Compl. and Answer, Ex. A, ¶ 21; Lowden Dep., Ex. B, at 19.)  Hundreds of onlookers lined the streets to pay their respects to Corporal Motley.  (Am. Compl. and Answer, Ex. A, ¶ 21; Lowden Dep., Ex. B, at 19.)  Many waved American flags and displayed signs thanking Corporal

Motley for his service to our country.  (Am. Compl. and Answer, Ex. A, ¶ 21; Kahsin Dep., Ex. E, at 38-39; Procession Photographs, Ex. F.)

      The Lowdens drove to the funeral in their Dodge Ram van.  (Am. Compl. and Answer, Ex. A, ¶ 22; Lowden Dep., Ex. B, at 15.)   For several years, Lewis had taped homemade signs to the inside windows of his van.  (Am. Compl. and Answer, Ex. A, ¶ 23; Lowden Dep., Ex. B, at 15-16.)   The signs, similar to bumper stickers, contained statements visible to observers outside the van.  (Am. Compl. and Answer, Ex. A, ¶ 23; Van Photographs, Ex. G.)  The statements on the signs were political in nature; most were critical of then-President Bush and government policies.  (Am. Compl. and Answer, Ex. A, ¶ 23; Kahsin Dep., Ex. E, at 37, 42; Van Photographs, Ex. G; Van Signs, Ex. H.)  The Lowdens had driven the van with these signs for years without incident.  (Am. Compl. and Answer, Ex. A, ¶ 23; Lowden Dep., Ex. B, at 16.)  They were still on display when the Lowdens arrived for Corporal Motley's funeral.  (Am. Compl. and Answer, Ex. A, ¶ 24; Lowden Dep., Ex. B, at 17-18.)  The signs did not contain any statements critical of the military or Corporal Motley.  (Am. Compl. and Answer, Ex. A, ¶ 24; Lowden Dep., Ex. B, at 75; Van Signs, Ex. H.)  No one at the funeral made any comment to the Lowdens about the signs on their van.  (Am. Compl. and Answer, Ex. A, ¶ 25; Lowden Dep., Ex. B, at 20-21.)

      Following a church service, the Lowdens entered the funeral procession and drove for one to two miles.  (Am. Compl. and Answer, Ex. A, ¶ 26; Lowden Dep., Ex. B, at 21, 61.)  Deputy Kahsin, who was directing funeral traffic along the procession route, was informed by a fellow officer at a different location that there was a van in the funeral procession with anti-government protest signs in its windows.  (Am. Compl. and Answer, Ex. A, ¶ 27; Kahsin Dep., Ex. E, at 12; Bailey Dep., Ex. I, at 12-13.)  Although he had no information to suggest that the

Lowdens' participation in the funeral procession had caused any disruption or disturbance,

Deputy Kahsin ordered the Lowdens to pull over to the side of the road.  (Am. Compl. and

Answer, Ex. A, ¶ 29; Lowden Dep., Ex. B, at 21-22; Kahsin Dep., Ex. E, at 12-16, 41; Hager

Dep., Ex. J, at 35.)

Deputy Kahsin approached the Lowdens' van and asked Lewis why he had signs in his

windows.  (Am. Compl. and Answer, Ex. A, ¶ 31.)  Lewis replied that it was his First

Amendment right to criticize the government.  (Am. Compl. and Answer, Ex. A, ¶ 31.)  Deputy

Kahsin then asked both Jean and Lewis if they were protesting.  (Am. Compl. and Answer, Ex.

A, ¶ 31.)  They both replied that they were not protesting and that they were there to attend the

funeral because they were like family to Corporal Motley.  (Am. Compl. and Answer, Ex. A, ¶

31.)  Nonetheless, Deputy Kahsin placed Lewis and Jean under arrest for allegedly violating the

funeral protest statute, M.C.L. § 750.167d.  (Am. Compl. and Answer, Ex. A, ¶ 32; Kahsin Dep.,

Ex. E, at 22-24, 40.)

After arresting the Lowdens, Kahsin took their van into police custody and searched it.

(Kahsin Dep., Ex. E, at 27-28.)  The Lowdens were detained in jail for approximately 24 hours

before being released on personal recognizance.  (Am. Compl. and Answer, Ex. A, ¶ 33; Lowden

Dep., Ex. B, at 28, 30.)  The criminal charges against them were eventually dismissed.  (Am.

Compl. and Answer, Ex. A, ¶ 34; Lowden Dep., Ex. B, at 30.)  This suit followed.

## SUMMARY-JUDGMENT STANDARD

A motion for summary judgment must be granted if the movant shows that "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party," there is no genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Partial summary judgment may be entered for a plaintiff as to liability alone, with the issue of damages proceeding to trial. 10B Wright, Miller & Kane, *Federal Practice and Procedure* § 2736 (3d ed.).

## ARGUMENT

**I.      PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT AGAINST CLARE COUNTY BECAUSE THE FUNERAL PROTEST STATUTE IS UNCONSTITUTIONAL AND THE COUNTY'S POLICY TO ENFORCE IT WAS A MOVING FORCE BEHIND THE LOWDENS' ARREST.**

The liability of counties and other municipal entities under 42 U.S.C. § 1983 is governed by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under *Monell*, if an "action pursuant to official municipal policy of some nature caused a constitutional tort," then the municipality is liable as the wrongdoer. *Id.* at 691. "To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights." *Miller v. Sanilac County*, 606 F.3d 240, 254-55 (6th Cir. 2010).

In this case, the Lowdens' constitutional rights were violated because the statute they were arrested for violating, M.C.L. § 750.167d, is facially unconstitutional. Summary judgment should be entered against Clare County because its official policy was to enforce the statute and that policy was a moving force behind the Lowdens' arrest.

**A.     The Lowdens' Constitutional Rights Were Violated Because They Were Arrested For Violating the Funeral Protest Statute, Which Is Unconstitutional On Its Face.**

The first question under the *Monell* doctrine is whether the Lowdens' constitutional rights were violated.  *See Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007) (describing two-pronged inquiry for municipal liability).  It is unlawful to enforce a facially unconstitutional statute, *Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 193 (6th Cir. 1997), and if a statute is unconstitutional a person "suffer[s] constitutional injury by being arrested under [its] authority," *Carey v. Nevada Gaming Control Bd.*, 279 F.3d 873, 880 (9th Cir. 2002).  Here, it is undisputed that the Lowdens were arrested for violating the funeral protest statute.  (Am. Compl. and Answer, Ex. A, ¶ 32; Kahsin Dep., Ex. E, at 11, 28, 40.) Therefore, assuming the funeral protest statute is unconstitutional, the Lowdens' constitutional rights were violated when they were arrested under its authority.

The constitutionality of the funeral protest statute has already been the subject of exhaustive briefing in this case, both by Plaintiffs and by the Attorney General as Defendant-Intervenor.  For the sake of brevity, therefore, Plaintiffs hereby incorporate by reference the arguments set forth on pages 7-25 of their brief in support of their motion for partial judgment on the pleadings (Dkt. # 31) and in their two reply briefs on the same motion (Dkt. ## 43, 51).

After argument and briefing from both sides, this Court agreed with all of Plaintiffs' arguments challenging the facial validity of the statute and has found that the statute is likely unconstitutional on its face.  *See Lowden I*, 709 F. Supp. 2d at 551-65 (Dkt. # 52 at 16-41). Addressing Plaintiffs' facial challenge under the vagueness doctrine of the Fourteenth Amendment, the Court ruled that "Plaintiffs have made a compelling case that the Michigan statute is unconstitutionally vague both because it does not provide ordinary people with fair

warning of what conduct is prohibited and also does not provide adequate direction to law enforcement." *Id*. at 554 (Dkt. # 52 at 22). As to Plaintiffs' First Amendment challenge, the Court concluded that "it is likely that the Michigan funeral protest [statute] is unconstitutionally overbroad on its face in violation of the First Amendment." *Id*. at 564 (Dkt. # 52 at 38). Specifically, the Court found that "Plaintiffs' argument that the statute prohibits a substantial amount of protected conduct is persuasive, particularly given the vagueness of the term 'adversely affects,'" *id*. at 557 (Dkt. # 52 at 26); that "it is likely that the . . . statute is not content neutral," *id*. at 560 (Dkt. # 52 at 31-32); that "it is likely that the . . . statute is not narrowly tailored," *id*. at 563 (Dkt. # 52 at 37); and that "[i]t is likely that the statute does not leave open ample alternatives for communication," *id*. (Dkt. # 52 at 38).

The Court has not yet made a definitive ruling on the constitutionality of the statute, but now that discovery is complete and there are no genuine disputes of fact, Plaintiffs' facial challenge is ripe for adjudication. The Court should find that the statute is unconstitutional on its face and that the Lowdens were deprived of their constitutional rights when they were arrested for violating it.

**B.    Clare County's Policy To Enforce the Funeral Protest Statute Was a Moving Force Behind the Lowdens' Arrest.**

Not only were the Lowdens' constitutional rights violated by their arrest under a facially unconstitutional statute, Plaintiffs have also alleged—and now proved—that municipal policy was a moving force behind the arrest. Through the directives of its sheriff and prosecutor, Clare County's official policy was to enforce the funeral protest statute. Based on this policy, Deputy Kahsin arrested the Lowdens.

### 1. It Was Clare County's Official Policy To Enforce the Funeral Protest Statute.

Municipal policy need not be a written ordinance; it may be a "statement" or "decision" by a high-ranking official, such as a sheriff or prosecutor, "whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 690, 694. In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), the Supreme Court held that municipal liability may be imposed for a single decision by an official—in that case, the county prosecutor—who "possesses final authority to establish municipal policy with respect to the action ordered." *Id*. at 482. As the Sixth Circuit explained in *Meyers v. City of Cincinnati*, 14 F.3d 1115 (6th Cir. 1994):

> The requirement that a municipality's wrongful actions be a "policy" is not meant to distinguish isolated incidents from general rules of conduct promulgated by city officials. It is meant to distinguish those injuries for which the government as an entity is responsible under § 1983 from those injuries for which the government should not be held accountable.

*Id*. at 1117 (quotation marks and citation omitted).

The question in this case, therefore, is whether Deputy Kahsin was acting entirely on his own in arresting the Lowdens for violating the funeral protest statute, or whether he was acting instead pursuant to a municipal policy to make arrests of that nature. In denying the County's motion to dismiss, this Court agreed with Plaintiffs that it was plausible that high-ranking county officials "whose edits or acts may fairly be said to represent official policy" knew about Corporal Motley's funeral in advance, had concerns about the possibility of protests at the funeral, and therefore decided that anyone who protested should be stopped and arrested under Michigan's new funeral protest statute. *Lowden I*, 709 F. Supp. 2d at 566-68 (Dkt. # 52 at 43-47.) In fact, that is exactly what happened.

Clare County Sheriff Jeffery Goyt and Clare County Prosecutor Norman Gage had final policymaking authority with respect to law enforcement issues in the county.  (Gage Dep., Ex. D, at 9, 27-28; Kahsin Dep., Ex. E, at 34-35.)  They were both concerned by recent news stories about an unpopular church group from Kansas that staged protests near military funerals.  (Goyt Dep., Ex. C, at 9; Gage Dep., Ex. D, at 13-14.)  They had also recently learned that the Michigan Legislature had enacted a criminal statute to deter such protests.  (Goyt Dep., Ex. C, at 10; Gage Dep., Ex. D, at 13-14.)  They discussed the matter, and Sheriff Goyt asked Prosecutor Gage to locate the statute so it could be provided to the police officers who would be on duty at Corporal Motley's funeral and procession.  (Goyt Dep., Ex. C, at 10, 20; Gage Dep., Ex. D, at 14-17.)  Shortly before the funeral, Goyt and Gage held a briefing where they distributed copies of the statute.  (Goyt Dep., Ex. C, at 13; Kahsin Dep., Ex. E, at 8-9, 34.)  Goyt made a brief speech introducing the purpose of the briefing, and Gage advised the police officers in attendance that they could enforce the funeral protest statute (Kahsin Dep., Ex. E, at 34; Defs.' Resp. to Pls.' Interrogs., Ex. K, at 3).  The officers in attendance, including Deputy Kahsin, reasonably concluded that it was the County's policy to enforce the funeral protest statute.  (Kahsin Dep., Ex. E, at 10; Hager Dep., Ex. J, at 15.)

Thus, this is not a case in which an individual officer made an unconstitutional arrest and a plaintiff is seeking municipal liability based solely on a theory of *respondeat superior*.  *See Monell*, 436 U.S. at 691.  It is a case in which high-ranking municipal officials with final policymaking authority made a conscious decision to enforce an unconstitutional statute.  *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993); *Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008).  That decision is a "policy" under *Monell* and *Pembaur*, and Clare County is liable for the constitutional torts caused by that policy.

11

2.     **The County's Policy Was a Moving Force Behind the Lowdens' Arrest.**

Finally, in addition to proving that Clare County had an unconstitutional policy, Plaintiffs must demonstrate a causal relationship between the policy and the Lowdens' arrest—in other words, that the policy was a "moving force" behind the violation of their constitutional rights. *See Garner*, 8 F.3d at 364-65 (concluding that police department's unconstitutional policy authorizing deadly force against nondangerous fleeing felons caused the death of plaintiff's son).

In this case, the "moving force" element is easily satisfied and undisputed.  Shortly before the Motley funeral, Sheriff Goyt and Prosecutor Gage held a briefing where they distributed copies of the new funeral protest statute and advised the police officers in attendance that they could enforce the funeral protest statute.  (Goyt Dep., Ex. C, at 13; Kahsin Dep., Ex. E, at 8-9, 34; Defs.' Resp. to Pls.' Interrogs., Ex. K, at 3.)  Deputy Kahsin was at the briefing. (Kahsin Dep., Ex. E, at 8-11, 34.)  Based on this briefing, Kahsin reasonably understood that it was the policy of the County to enforce the statute.  (Kahsin Dep., Ex. E, at 10.)  And when he enforced the statute by arresting the Lowdens, he did so based on what he learned at the briefing. (Kahsin Dep., Ex. E, at 11.)

In sum, the County's highest ranking law enforcement officials made a decision to enforce the funeral protest statute at Todd Motley's funeral, leading directly to the arrest of Lewis and Jean Lowden.  That statute is unconstitutional on its face.  Clare County, therefore, is liable for the arrest.  Partial summary judgment should issue.

II. **PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT KAHSIN BECAUSE HE VIOLATED THE LOWDENS' CLEARLY ESTABLISHED FIRST, FOURTH, AND FOURTEENTH AMENDMENT RIGHTS.**

This lawsuit is a challenge to the funeral protest statute both on its face and as applied. With respect to Plaintiffs' facial challenge, the Lowdens' constitutional rights were violated by their arrest under the funeral protest statute because it is always unlawful to enforce a facially unconstitutional statute and a person arrested under the authority of such a statute suffers a constitutional injury.   (*See supra* p. 8.)  This Court has already ruled that Deputy Kahsin is "entitled to qualified immunity on Plaintiffs' *facial* challenges" because it was not "clearly established," at the time of the Lowdens' arrest, that the funeral protest statute was unconstitutional on its face.  *Lowden I*, 709 F. Supp. 2d at 550 (Dkt. # 52 at 14) (emphasis added).  Therefore, liability on Plaintiffs' facial challenges runs only against the County, which cannot claim qualified immunity.  *See Owens v. City of Independence*, 445 U.S. 622, 638 (1980).

Plaintiffs' surviving claims against Deputy Kahsin, by contrast, are based on the manner and circumstances in which he *applied* the statute—and more specifically, whether that particular application of the statute violated the Lowdens' clearly established constitutional rights under the First, Fourth, and Fourteenth Amendments.  *See, e.g.*, *Thompson v. Campbell*, 81 F. App'x 563, 569 (6th Cir. 2003) (analyzing facial and as-applied challenges as "distinct constitutional claim[s]").  Qualified immunity must be denied "'if it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  At the same time this Court determined Kahsin was entitled to qualified immunity on Plaintiffs' facial challenges, the Court held that Kahsin is "*not* entitled to qualified immunity on Plaintiffs' *as applied* claims because . . . it *was* clearly established that enforcing the Michigan statute in the

13

factual circumstances that are alleged violated Plaintiffs' constitutional rights." *Id.* (Dkt. # 52 at 15) (emphases added).

Now that discovery is complete, the only remaining question is whether the "factual circumstances . . . alleged" are actually what happened. In fact, the record reveals that there is no genuine dispute that Plaintiffs' material allegations are true. Thus, not only must qualified immunity be denied, Plaintiffs are entitled to a judgment of liability as a matter of law.

> ### A.   Kahsin Violated the Lowdens' Clearly Established First Amendment Rights By Enforcing the Funeral Protest Law Based on the Content of Their Speech.

As with Plaintiffs' facial challenge, their as-applied claims under the First Amendment have been briefed by both sides. For the sake of brevity, therefore, Plaintiffs hereby incorporate by reference the legal arguments set forth on pages 14-20 of their brief in opposition to Defendants' motion for dismissal and judgment on the pleadings (Dkt. # 23).

To summarize, it is clearly established that even facially valid "time, place, and manner" laws may not be enforced based on the content or viewpoint of a person's speech. *See Frisby v. Schultz*, 487 U.S. 474, 488 (1988) (facially constitutional statutes are always open to as-applied challenges); *Logsdon v. Hains*, 492 F.3d 334, 346 (6th Cir. 2007) (qualified immunity denied where facially neutral law was enforced based on the content of speech). Thus, even if it was reasonable for Kahsin to presume that the funeral protest statute was constitutional on its face, it was clearly established that he could not enforce that statute on based on the content or viewpoint of the Lowdens' signs.[3] This Court agreed, and—based on the facts alleged—denied

---

[3] Regulation of speech based on content excludes certain *subject matters*, whereas viewpoint discrimination favors a particular position *about* a given subject. *Boos v. Barry*, 485 U.S. 312, 319 (1988). In a public forum, content-based discrimination is presumptively unconstitutional, and viewpoint-based discrimination is always forbidden. *Pleasant Grove City v. Summum*, 129 S. Ct. 1125, 1132 (2009).

Kahsin's bid for qualified immunity on Plaintiffs' as-applied First Amendment claims.  *Lowden I*, 709 F. Supp. 2d at 565 (Dkt. # 52 at 41).

As discovery has revealed, those facts are not in dispute.  Kahsin was directing traffic along the route of the funeral procession when he was informed by another officer that there was a van in the funeral procession with anti-government protest signs in its windows.  (Am. Compl. and Answer, Ex. A, ¶ 27; Kahsin Dep., Ex. E, at 8, 12; Bailey Dep., Ex. I, at 12-13.)  Although Kahsin had no information to suggest that the Lowdens were engaged in any disruptive or improper conduct, he ordered the Lowdens to pull over to the side of the road.  (Am. Compl. and Answer, Ex. A, ¶ 29; Lowden Dep., Ex. B, at 21-22; Kahsin Dep., Ex. E, at 12-16, 41; Hager Dep., Ex. J, at 35.)  Kahsin's decision to stop the Lowdens was based on the fact that their van had a lot of signs which appeared to have an anti-government bent.  (Kahsin Dep., Ex. E, at 16.)

After stopping the van, Kahsin questioned Lewis Lowden about the signs.  (Am. Compl. and Answer, Ex. A, ¶ 31; Kahsin Dep., Ex. E, at 19.)  Lewis replied that he and Jean were not protesting and were close to the Motley family, and that the signs were his First Amendment right to criticize the government.  (Am. Compl. and Answer, Ex. A, ¶ 31; Kahsin Dep., Ex. E, at 17, 19.)  Kahsin nonetheless arrested the Lowdens for violating the funeral protest statute.  (Am. Compl. and Answer, Ex. A, ¶ 32; Kahsin Dep., Ex. E, at 28.)  Kahsin based his arrest of the Lowdens on the signs alone.  (Kahsin Dep., Ex. E, at 40.)  According to Kahsin, the signs were not appropriate for a funeral.  (Kahsin Dep., Ex. E, at 45.)  Although nearby spectators waved American flags and displayed their own signs thanking Corporal Motley for his service to the country, Kahsin did not consider those displays to be a violation of the funeral protest statute and would not have taken action against the Lowdens had their signs been supportive of Motley as

15

opposed to unsupportive of the government.  (Am. Compl. and Answer, Ex. A, ¶ 21; Kahsin

Dep., Ex. E, at 35-40, 46-47; Procession Photographs, Ex. F.)

    This evidence demonstrates, beyond any genuine dispute, that Kahsin stopped and

arrested the Lowdens based on the content and viewpoint of their speech in violation of their

First Amendment rights.  Furthermore, these rights were clearly established and no "facts exist

that would be material to the analysis of qualified immunity."  *Lowden I*, 709 F. Supp. 2d at 565

(Dkt. # 52 at 41).  Plaintiffs are therefore entitled to summary judgment on their as-applied First

Amendment claim.

> ### B.   Kahsin Violated the Lowdens' Clearly Established Fourth Amendment Rights Because There Was No Reasonable Suspicion or Probable Cause To Believe They Were Committing Any Crime.

    Kahsin is liable for at least two separate violations of the Lowdens' clearly established

Fourth Amendment rights.  First, he pulled the Lowdens out of the funeral procession without

reasonable suspicion.  Second, he arrested the Lowdens without probable cause.[4]  Kahsin has

already conceded that Plaintiffs' complaint "stated a claim with respect to the allegations in

support of their Fourth Amendment claim related to the absence of probable cause and that

genuine issues of material fact exist for determination by this Court at a later date."  (Dkt. # 26 at

¶ 6.)  However, no material facts have arisen during discovery that would change the Fourth

Amendment analysis at the summary-judgment stage.  Consequently, qualified immunity should

be denied, and summary judgment should be entered on Plaintiffs' Fourth Amendment claims.

---

[4] Kahsin is also liable for his unlawful search and seizure of the Lowdens' van as an
incident to their unlawful arrest.  *See Pillow v. City of Lawrenceburg*, 319 F. App'x 347, 351
(6th Cir. 2008) ("The search-incident-to-arrest exception to the warrant requirement applies only
when the police already have probable cause prior to the search" and "[o]nly where incident to a
*valid* arrest . . . ." (emphasis added)).  Kahsin acknowledges he had no justification for searching
and seizing the van independent of having arrested its occupants for allegedly violating the
funeral protest statute.  (Kahsin Dep., Ex. E, at 27-28.)  Therefore, because the arrest was
unconstitutional, the resulting search and seizure of the van was unlawful as well.

### 1. Kahsin Stopped the Lowdens Without Reasonable Suspicion.

A brief investigatory stop violates the Fourth Amendment unless it is "supported by reasonable suspicion to believe that criminal activity may be afoot," "justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted).  In this case, Kahsin pulled the Lowdens' van out of the procession for an investigatory stop.  (Am. Compl. and Answer, Ex. A, ¶ 29; Kahsin Dep., Ex. E, at 12-13, 16.)  When deposed, Kahsin gave two different explanations for why he did so, neither of which holds water.

First, Kahsin claimed he stopped the Lowdens because he believed their van "to be disruptive and kind of suspicious in nature."  (Kahsin Dep., Ex. E, at 13.)  However, Kahsin acknowledged that the Lowdens were *not* disruptive—they were not honking their horn, communicating with others along the procession route, or otherwise disturbing the peace; and there had been no complaints from the general public about the Lowdens' conduct.  (Kahsin Dep., Ex. E, at 40-41.)  As for the van being "kind of suspicious in nature," it is well established that an officer's statement that someone "looked suspicious" does not satisfy the reasonable suspicion standard.  *See Brown v. Texas*, 443 U.S. 47, 52 (1979); *United States v. Keith*, 559 F.3d 499 (6th Cir. 2009).

Second, Kahsin testified that he stopped the van because it had a lot of signs taped to the inside of its windows that appeared to have an anti-government bent.  (Kahsin Dep., Ex. E, at 16.)  These facts, too, fail to justify even a brief investigatory stop; neither the funeral protest statute nor any other law prohibits driving peacefully in a funeral procession with signs that criticize the government.  *See City of Ladue v. Gilleo*, 512 U.S. 43, 58 (1994) ("Most Americans would be understandably dismayed . . . to learn that it was illegal to display from their window

an 8- by 11-inch sign expressing their political views.").  In sum, Kahsin could "point to [no] specific, articulable facts that gave rise to a 'reasonable suspicion' that the [Lowdens were] engaged in criminal activity."  *United States v. Gross*, 624 F.3d 309, 315 (6th Cir. 2010).

### 2.   Kahsin Arrested the Lowdens Without Probable Cause.

A warrantless arrest violates the Fourth Amendment unless it is supported by probable cause to believe a crime "has been or is being committed," a standard more demanding that reasonable suspicion and one that "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2002).  Notably, the Sixth Circuit has repeatedly held that speech protected by the First Amendment cannot serve as probable cause for an arrest—even when the arresting officer claims to have identified a statute that he believes covers the speech in question.  *See Leonard v. Robinson*, 477 F.3d 347, 361 (6th Cir. 2007); *Swiecicki v. Delgado*, 463 F.3d 489, 499 (6th Cir. 2006); *Sandul v. Larion*, 119 F.3d 1250, 1256 (6th Cir. 1997).

In this case, shortly after Kahsin made the decision to pull the Lowdens out of the funeral procession, he made the decision to arrest them.  (Kahsin Dep., Ex. E, at 21-23.)  Even assuming Kahsin's decision to pull the Lowdens out of the funeral procession was supported by reasonable suspicion, he learned nothing during his brief subsequent investigation to establish the probable cause required for a full-fledged custodial arrest.  (Kahsin Dep., Ex. E, at 16-23.)  Kahsin's only purported basis for arresting the Lowdens was that there were anti-government signs taped to the inside windows of their van, which he believed violated the funeral protest statute.  (Kahsin Dep., Ex. E, at 16, 27-28, 36-40.)  But the Lowdens' anti-government signs were not prohibited by the funeral protest statute, as there was no evidence they were disrupting, disturbing, or

adversely affecting the funeral procession. *See* M.C.L. § 750.167d(1)(c). They were therefore not probable cause for arrest.

### 3. There Are No Genuine Disputes of Material Fact.

Plaintiffs are entitled to summary judgment as to liability on their Fourth Amendment claims because the facts are undisputed. "When no material dispute of fact exists, probable cause determinations are legal determinations that should be made by a court." *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005). Such claims go to the jury only when there are "disputed factual issues *underlying* probable cause," *id.* (emphasis added), which is not the case here.

It is possible that Kahsin will raise one fact that appears to be in dispute: whether the Lowdens' funeral flag was on the top of their van, as Lewis maintains (Lowden Dep., Ex. B, at 64-65), or inside the van and visible behind the windshield, as Kahsin states (Kahsin Dep., Ex. E, at 49-50). Although this dispute may be genuine, it is hardly material. First, although Kahsin testified that he did not see the funeral flag in the front windshield before he initiated the stop, he also testified that he would have pulled the van over in any event. (Kahsin Dep., Ex. E, at 49.) Therefore, he cannot claim that the investigatory stop was an innocent mistake that would not have occurred had Kahsin known prior to the stop that the Lowdens had a funeral flag. Second, after stopping the Lowdens, Kahsin did see that they had a funeral flag—but he arrested them anyway. Bizarrely, Kahsin claims that seeing the funeral flag made him *more* suspicious that the Lowdens were interlopers. (Kahsin Dep., Ex. E, at 50.) This explanation is senseless. Even if the funeral flag were in the Lowdens' windshield and not on the top of the van, that would not justify their arrest.

### 4. Qualified Immunity Should Be Denied.

The Sixth Circuit routinely denies qualified immunity in cases of warrantless arrests without probable cause because it is clearly established that such arrests are unconstitutional. *See Parsons v. City of Pontiac*, 533 F.3d 492, 504 (6th Cir. 2008); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310 (6th Cir. 2005); *Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000). Investigatory stops without reasonable suspicion are also unconstitutional under clearly established law. *Feathers v. Aey*, 319 F.3d 843, 850 (6th Cir. 2003).

In this case, Kahsin's actions were "objectively unreasonable" in light of both the facts known to him at the time of the arrest and the law clearly established at that time. *See id.* at 851. The Lowdens were exhibiting no conduct that could be reasonably construed as criminal. Their presence in the funeral procession was causing no disturbance or alarm, and Kahsin's only basis for singling them out was their political speech. It would therefore be clear to a reasonable officer that stopping and arresting them, under the funeral protest statute or any other authority, was a violation of their rights against unreasonable searches and seizures. Plaintiffs are therefore entitled to partial summary judgment on their Fourth Amendment claims.

### C. Kahsin Violated the Lowdens' Clearly Established Due Process Rights by Arresting Them for Violating a Statute That Was Unconstitutionally Vague As Applied to Them.

Lastly, in arresting the Lowdens under the funeral protest statute, Kahsin violated their clearly established due process rights. This Court has already agreed with Plaintiffs that the facts alleged in their complaint support an as-applied vagueness claim:

> [E]ven if a statute is not impermissibly vague on its face, it is subject to a due process challenge when its application in a particular case "failed to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden," quoting *Palmer v. City of Euclid*, 402 U.S. 544, 545 (1971) (per curiam). Here, an ordinary person would not understand how a law against

20

"adversely affecting" a funeral prohibits close friends of the deceased from driving peacefully in a funeral procession simply because homemade political signs are taped to the inside windows of their car.  Viewing the facts in the light most favorable to Plaintiffs, a reasonable officer could not have concluded that the statute gave the Lowdens fair notice that such conduct was forbidden.  *Leonard*, 477 F.3d at 359.  Notably, Deputies Kahsin and Woodcock have yet to advance any facts to undercut Plaintiffs' version of the events.

*Lowden I*, 709 F. Supp. 2d at 555 (Dkt. # 52 at 23-24).[5]

Now that discovery is complete, Kahsin has still not advanced any facts to undercut Plaintiffs' version of the events.  To the contrary, it is undisputed that Kahsin arrested the Lowdens, close friends of the deceased who were driving peacefully in the funeral procession, simply because homemade political signs were taped to the inside windows of their van.  (Kahsin Dep., Ex. E, at 40-41.)  According to Kahsin: "I did not believe they were appropriate."  (Kahsin Dep., Ex. E, at 45.)  That, of course, is the essence of arbitrary and standardless enforcement.  *See Smith v. Goguen*, 415 U.S. 566, 573-75 (1974).  Plaintiffs are therefore entitled to partial summary judgment on their as-applied vagueness claim.

### III.   THE COURT SHOULD ENTER A JUDGMENT DECLARING THE FUNERAL PROTEST LAW UNCONSTITUTIONAL.

Following supplemental briefing (Dkt. ## 54-57), this Court ruled that it "will exercise discretion to entertain Plaintiffs' request for declaratory relief."  *Lowden II*, 709 F. Supp. 2d at 583 (Dkt. # 58 at 20).  Plaintiffs' motion for a declaratory judgment on the constitutionality of the funeral protest statute remains pending.  (*See* Dkt. # 59.)  Now that the issues have been fully briefed and the facial validity of the statute is squarely before the Court, Plaintiffs request that

---

[5] Plaintiffs' legal argument and authority in support of their vagueness-as-applied claim are set forth on pages 24-26 of their brief in opposition to Defendants' motion for dismissal and judgment on the pleadings (Dkt. # 23).

the Court exercise its discretion at this time to grant their pending motion and declare the statute unconstitutional.  *See* 28 U.S.C. § 2201(a); Fed. R. Civ. P. 57.

## CONCLUSION

For the reasons stated above, Plaintiffs request that the Court enter a judgment of liability against Defendants Clare County and Lawrence Kahsin and declare Michigan's funeral protest statute unconstitutional.

Respectfully submitted,

/s/ Daniel S. Korobkin
Daniel S. Korobkin (P72842)

Hugh M. Davis (P12555)
Cynthia Heenan (P53664)
Constitutional Litigation
  Associates, P.C.
450 W. Fort St., Ste. 200
Detroit, MI 48226
(313) 961-2255
conlitpc@sbcglobal.net

Michael J. Steinberg (P48085)
Kary L. Moss (P49759)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org
msteinberg@aclumich.org

Attorneys for Plaintiffs

Dated:  February 22, 2011