UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LEWIS LOWDEN, et al.,

     Plaintiffs,

v.                                    Case No. 1:09-cv-11209
                                         Hon. Thomas L. Ludington

CLARE COUNTY, et al.,

     Defendants,

BILL SCHUETTE,
Attorney General of the State of Michigan,

     Defendant-Intervenor.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DISMISSING DEFENDANT CLARE COUNTY WITH PREJUDICE, CANCELING FINAL PRETRIAL CONFERENCE AND MOTIONS HEARING AND SCHEDULING IN-PERSON STATUS CONFERENCE, GRANTING PLAINTIFFS' RENEWED REQUEST FOR DECLARATORY RELIEF, AND DECLARING THE LANGUAGE CONTAINED IN MICHIGAN'S FUNERAL PROTEST STATUTE PROHIBITING SPEECH OR CONDUCT THAT WILL "ADVERSELY AFFECT" A FUNERAL UNCONSTITUTIONAL**

Plaintiffs Lewis Lowden and Robert Lowden ("Plaintiffs") filed a complaint against Defendants Clare County ("the County"), and Sheriff Deputies Lawrence Kahsin ("Kahsin") and Calvin Woodcock ("Woodcock") (collectively, "Defendants") on April 1, 2009.  Plaintiff Robert Lowden is the personal representative of the estate of Jean Lowden.  Plaintiffs' complaint initiated a facial and an as-applied challenge to Michigan Compiled Laws § 750.167d (the "Michigan funeral protest statute" or "the statute") against Defendants for violating the Lowdens' constitutional rights pursuant to 42 U.S.C. § 1983.  Plaintiffs' claims are based on the investigatory stop and subsequent arrest of Lewis and Jean Lowden ("the Lowdens") during a funeral procession on September 26,

2007.

On January 29, 2010, Michigan Attorney General Michael Cox[1] intervened pursuant to 28 U.S.C. § 2403(b) to defend the constitutionality of the Michigan funeral protest statute. The statute provides in full:

> (1) A person shall not do any of the following within 500 feet of a building or other location where a funeral, memorial service, or viewing of a deceased person is being conducted or within 500 feet of a funeral procession or burial:
>
> > (a) Make loud and raucous noise and continue to do so after being asked to stop.
> >
> > (b) Make any statement or gesture that would make a reasonable person under the circumstances feel intimidated, threatened, or harassed.
> >
> > (c) Engage in any other conduct that the person knows or should reasonably know will disturb, disrupt, or adversely affect the funeral, memorial service, viewing of the deceased person, funeral procession, or burial.
>
> (2) A person who violates subsection (1) is a disorderly person and is guilty of a felony punishable as provided under section 168.

Mich. Comp. Laws § 750.167d. A violation of the statute is punishable by up to two years' imprisonment. Mich. Comp. Laws § 750.168. Plaintiffs' claims challenge the "adversely affect" language of the statute, its application to an area within 500 feet of a funeral or related event, and its general application to a funeral or related events.

Plaintiffs' complaint alleges four counts pursuant to 42 U.S.C. § 1983, including: (1) violation of the Lowdens' First Amendment rights based on the statute's overbreadth; (2) violation of the Lowdens' right to due process under the Fourteenth Amendment because of the vagueness of the statutory provision; (3) violation of the Lowdens' Fourth Amendment right to be free from unreasonable searches and seizures; and (4) Clare County's municipal liability for its violations of

---

[1]Michigan Attorney General Bill Schuette has since been substituted as the proper defendant-intervenor.

the First, Fourth, and Fourteenth Amendments. Plaintiffs seek a declaration that the Lowdens' First, Fourth, and Fourteenth Amendment rights were violated by all Defendants; a declaration that the Michigan funeral protest statute is unconstitutional on its face; compensatory damages for, *inter alia*, attorney's fees incurred to defend criminal charges, fees to recover the Lowdens' van from an impound lot; and costs and attorney's fees pursuant to 42 U.S.C. § 1988.

On March 26, 2010, the Court addressed three dispositive motions: (1) Deputies Kahsin and Woodcock and the County's motion to dismiss or for judgment on the pleadings; (2) Plaintiffs' motion for partial judgment on the pleadings; and (3) the Attorney General's motion for summary judgment. The Court concluded that the County was not entitled to dismissal of Plaintiffs' claims because Plaintiffs pleaded sufficient facts to plausibly suggest an actionable municipal policy. The Court also determined that Deputies Kahsin and Woodcock were not entitled to qualified immunity on Plaintiffs' Fourth Amendment cause of action or Plaintiffs' as-applied First and Fourteenth Amendment causes of action because Defendants' conduct violated the Lowdens' clearly established constitutional rights, accepting Plaintiffs' allegations as true. On the other hand, the Court found that Deputies Kahsin and Woodcock were entitled to qualified immunity on Plaintiffs' First and Fourteenth Amendment facial challenges to the Michigan funeral protest statute because it was not clearly established that the statute is unconstitutional on its face, if it is in fact unconstitutional. The Court also denied Plaintiffs' motion for partial judgment on the pleadings without prejudice, and invited additional briefing on the constitutionality of the statute.

On July 16, 2010, Plaintiffs renewed their motion for declaratory judgment as a result of the Court's July 1, 2010 order [Dkt. #58], concluding that it would be appropriate to entertain Plaintiffs' request for declaratory relief but finding that Plaintiffs had not identified specific language to be

addressed in granting declaratory relief. Plaintiffs contended that they had demonstrated that the statute is facially unconstitutional in violation of the First and Fourteenth Amendments and proposed specific language should their motion be granted. The Court found it prudent to decline to determine the precise scope of declaratory relief that may be appropriate as to Plaintiffs' facial challenges until the as-applied claims have been resolved either by dispositive motion or at trial.

Now before the Court is Plaintiffs' motion for partial summary judgment [Dkt. #81], which was filed on February 22, 2011. Plaintiffs generally contend that they are entitled to summary judgment because Michigan's funeral protest statute is unconstitutional and that the Lowdens were arrested as a result of the County's official policy to enforce the statute. Plaintiffs also contend that they are entitled to summary judgment against Deputy Kahsin because he applied the statute in a manner that violated the Lowdens' clearly established constitutional rights under the First, Fourth, and Fourteenth Amendments. Plaintiffs request that summary judgment be entered as to liability only, with the question of damages to be resolved by a jury. Defendants filed a response [Dkt. #91] on March 15, 2011, contending that there is no basis for imposition of liability against Defendant Kahsin and that Plaintiffs have not satisfied their burden of establishing that the alleged conduct violated clearly established law. Plaintiffs filed a reply [Dkt. #95] on March 29, 2011.

Also before the Court is Defendants' motion for summary judgment [Dkt. #88], which was filed on March 3, 2011. Defendants generally contend that Plaintiffs cannot establish a genuine issue of material fact with respect to their municipal liability claim against the County and that Plaintiffs' § 1983 claims should be dismissed pursuant to the "clearly established" component of the qualified immunity analysis. Plaintiffs filed a response [Dkt. #92] on March 23, 2011, asserting that the County is not entitled to summary judgment because the Lowdens' arrest under Michigan's funeral

-4-

protest statute was a result of municipal policy and that Defendant Kahsin is not entitled to summary judgment because he violated the Lowdens' clearly established constitutional rights. Defendants filed a reply [Dkt. #97] on April 6, 2011.

The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. E.D. Mich. LR 7.1(f)(2). For the reasons provided herein, the Court will grant in part and deny in part Plaintiffs' motion for partial summary judgment and grant in part and deny in part Defendants' motion for summary judgment.

## I.    Facts

On September 26, 2007, the Lowdens traveled to Clare County in their 1995 white Dodge Ram van to attend the funeral of Corporal Todd Motley, a soldier who was killed in action in Iraq while serving in the United States Army. The funeral and procession through the downtown area of the town of Harrison was widely publicized and hundreds of onlookers lined the streets to pay their respects to Corporal Motley. Local law enforcement was mobilized to provide security and direct traffic. Clare County Sheriff Jeffery Goyt ("Sheriff Goyt") and Clare County Prosecutor Norman Gage ("Prosecutor Gage") were concerned by recent news stories about an unpopular church group from Kansas that staged protests near military funerals. They had also recently learned that the Michigan Legislature had enacted a criminal statute to deter such protests. They discussed the matter, and Sheriff Goyt asked Prosecutor Gage to locate the statute so it could be provided to the police officers who would be on duty at the funeral and procession. Prior to Corporal Motley's funeral, Sheriff Goyt and Prosecutor Gage held a briefing where they distributed copies of the

statute. Deputy Kahsin was present at the briefing.

The Lowdens had known Corporal Motley and his family for approximately fifteen years. In particular, Jean Lowden homeschooled Corporal Motley in high school, and Lewis Lowden took Corporal Motley on fishing and camping trips in the summer. Lewis Lowden alleges he is a veteran of the United States Army and the recipient of a Good Conduct Medal, the Army Achievement Medal, the National Defense Medal, the Reserve Components Achievement Medal, and the Humanitarian Service Medal. The Lowdens were devastated by Corporal Motley's death. Corporal Motley's family invited the Lowdens to attend and participate in Corporal Motley's funeral service, including the funeral procession. Many onlookers waved American flags and displayed signs thanking Corporal Motley for his service to our country.

Upon arriving at the church service, the Lowdens were asked if they intended to drive in the funeral procession from the church to the burial site, the Lowdens said yes, and they were directed to a parking lot for all the procession vehicles. The windows of the Lowdens' van had signs taped to the inside that were similar to bumper stickers and visible to observers outside the van. The stickers contained statements that were political in nature, and most were critical of then-U.S. President George W. Bush and his administration's policies. The signs did not contain any statements that were critical of the military or Corporal Motley. No comments were made to the Lowdens about the homemade signs on their van, which Lewis Lowden had been taping to the inside windows of the van for years. A funeral flag identifying the vehicle as a participant in the procession was placed either on the outside of the van or on the inside dashboard, like many other vehicles. Following the church service, the Lowdens entered the funeral procession and proceeded slowly in their vehicle for approximately two miles.

-6-

At approximately 2:30 p.m., Deputy Kahsin was advised by a fellow officer at a different location that there was a van in the funeral procession with signs in its windows. When the Lowdens' van reached Deputy Kahsin's location, Deputy Kahsin ordered Lewis Lowden, who was driving, to pull over. Lewis Lowden pulled over as directed, and Deputy Woodcock arrived on the scene to assist Deputy Kahsin. Deputy Kahsin asked Lewis Lowden why he had signs in his windows, Lewis Lowden replied that it was his First Amendment right to criticize the government. Deputy Kahsin then asked both Jean and Lewis Lowden if they were protesting. The Lowdens both replied that they were not protesting and that they were there to attend the funeral because they were like family to Corporal Motley. When Deputy Kahsin stopped the Lowdens, he had not been advised by anyone of a disruption or disturbance caused by the Lowdens' participation in the funeral procession, nor did any such disruption or disturbance occur.

Deputy Kahsin then placed the Lowdens under arrest for allegedly violating the funeral protest statute. As a result of their arrest in the middle of the funeral procession, the Lowdens were unable to attend the burial service of Corporal Motley as they had planned. After arresting the Lowdens, Kahsin took their van into police custody and searched it. Ultimately, the Lowdens were detained in jail for approximately twenty-four hours before being released on personal recognizance. Jean Lowden, who was fifty-six years old, had serious medical conditions that made her arrest and detention physically painful and distressing. The criminal charges against the Lowdens were eventually dismissed without prejudice. This civil action followed.

## II.    Analysis

### A.    Legal Standard

A motion for summary judgment should be granted if the movant shows that "there is no

-7-

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**B.   Clare County's Municipal Liability Under *Monell***

Plaintiffs contend that their constitutional rights were violated because the statute they were arrested for violating, Mich. Comp. Laws § 750.167d, is facially unconstitutional.  Plaintiffs request that, as a result, summary judgment be entered against the County because it had an official policy to enforce the statute which was a moving force behind the Lowdens' arrest. Defendants, however, contend that Plaintiffs cannot establish a genuine issue of material fact with respect to their municipal liability claim against the County because it did not have a municipal policy for enforcing Michigan's funeral protest statute.

The liability of counties and other municipal entities under 42 U.S.C. § 1983 is governed by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under *Monell*, if an "action pursuant to official municipal policy of some nature caused a constitutional tort," then the municipality is liable as the wrongdoer. *Id.* at 691. "To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010). Local governmental units may only be held liable when "action pursuant to official municipal policy of some nature causes a constitutional tort," and not on the basis of respondeat superior. *Monell*, 436 U.S. at 691. In this regard, a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Id.* at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Under *Monell*, there are several avenues available for a plaintiff to prove the existence of a municipal policy, including: (1)

a formally promulgated policy; (2) a well settled custom or usage; and (3) a final decision by a municipal policymaker. *Id.* In this particular case, however, the Plaintiffs cannot establish a viable claim under any of the available theories.

A policy "implies a course of action consciously chosen from among various alternatives." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). The clearest type of policy is one formally embodied in a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by the municipality's lawmaking body. *Monell*, 436 U.S. at 690. These municipal policies are typically intended to "establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Municipal policy need not be a written ordinance; it may be a "statement" or "decision" by a high-ranking official, such as a sheriff or prosecutor, "whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 690, 694. Municipal liability may be imposed for a single decision by an official who "possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 482 (imposing municipal liability as a result of the county prosecutor's decision). The requirement that a municipality's wrongful actions be a "policy" is not meant to distinguish isolated incidents from general rules of conduct promulgated by city officials but to distinguish the injuries for which the government entity is responsible under § 1983 from those injuries for which the government should not be held accountable. *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994).

Liability on the part of a municipality can also attach to the extent that an alleged practice constitutes a "custom," even though it may be contrary to the formally promulgated policies. *Monell*, 436 U.S. at 691 (providing that " '[a]lthough not authorized by written law, such practices of state

officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law.' " (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). Moreover, such a practice may constitute a "policy" whether it is carried out by the policymakers themselves or subordinate officers. *Id.* For a practice of subordinates to be attributable to the governmental entity, however, "it must have been so well settled and widespread that the policymaking officials . . . can be said to have actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro v. Mcleod*, 871 F.2d 1151, 1156 (1st Cir. 1989). Regardless of whether the County may have had a "policy" of enforcing Mich. Comp. Laws§ 750.167d, there must be a pattern of unconstitutional conduct that is persistent and widespread in order to establish a custom. *Monell*, 436 U.S. at 691. In this regard, the case law is clear that a single incident does not constitute a "pattern" or "policy" that can give rise to municipal liability. *Tuttle*, 471 U.S. at 823-24 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*.").

According to Plaintiffs, the question in this case is whether Deputy Kahsin was acting entirely on his own, or whether he was acting pursuant to a municipal policy in arresting the Lowdens for violating the funeral protest statute. In denying the County's motion to dismiss, the Court agreed with Plaintiffs that it was plausible that high-ranking county officials "whose edits or acts may fairly be said to represent official policy" knew about Corporal Motley's funeral in advance, had concerns about the possibility of protests at the funeral, and therefore decided that anyone who protested should be stopped and arrested under Michigan's new funeral protest statute. [Dkt. #52 at 43-47]. Plaintiffs contend that is exactly what happened, and argue that this is not a case in which an individual officer made an unconstitutional arrest and a plaintiff is seeking municipal liability based solely on a theory of respondeat superior. *See Monell*, 436 U.S. at 691. Plaintiffs

-11-

instead characterize it as a case in which high-ranking municipal officials with final policymaking authority made a conscious decision to enforce an unconstitutional statute. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993); *see also Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008). That decision is a "policy" under *Monell* and *Pembaur* according to Plaintiffs, and the County is thus liable for the constitutional torts caused by that policy.

Defendants, however, contend that the Court did not clearly reject their argument on the merits regarding municipal liability for a policy of enforcing a state law under the circumstances of this case.  Instead, Defendants construed the Court's order as finding that Plaintiffs' pleadings were adequate under Federal Rule of Civil Procedure 12(b)(6). Defendants explain that discovery has corroborated that the text of the statute was provided to the officers with the prosecutor's advice that the deputies could enforce the statute.  Defendants contend that these facts alone are insufficient to establish a "policy" attributable to the County as the moving force behind the alleged unconstitutional conduct. More specifically, to the extent that they were acting as Clare County policymakers, there is nothing to suggest that Sheriff Goyt or Prosecutor Gage made a final decision or made a conscious choice to pursue a course of action that would result in the alleged injury.

Defendants acknowledge that municipal liability could attach if this case involved actual "directives" to Deputy Kahsin to make an arrest under a known set of circumstances. *See Pembaur*, 475 U.S. at 480-81. The record reflects that there is no such evidence in this case. Def.s' Mot. For Summ. J. Ex. 4 at 47.  In addition, Defendants note that Plaintiffs are seeking to impose liability for conduct that is functionally equivalent to "training" or "legal updates" which, perhaps ironically, is a precautionary measure for avoiding liability under *Monell*.

Moreover, Defendants emphasize that Plaintiffs ignore the fact that Sheriff Goyt and

-12-

Prosecutor Gage were both obligated to enforce the laws of the State of Michigan, and that they shared that obligation with subordinate, non-policymaking deputies, such as Deputy Kahsin, who pursued their "duties as a state agent when enforcing state law or policy." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1994).The duty to enforce the law cannot be abrogated. *See Brownstown Twp. v. Wayne County*, 68 Mich. App. 244, 249 (Ct. App. 1976) ("the sheriff could not shut his eyes to crime and . . . it was the duty of the sheriff to enforce those laws enacted by the people for the protection of their lives, persons, property, health, and morals."); *see also Phelps-Roper v. Heineman*, 710 F. Supp. 2d 890, 899-900, n.3 (D. Neb. 2010) (holding that defendant city officials lacked power to consent to terms of proposed consent decree in funeral protestor's action alleging that funeral picketing law and flag mutilation statute were unconstitutional, both facially and as-applied, where "the Court has not yet interpreted the [funeral picketing law] and . . . [d]efendants may not abrogate their duty to enforce the law in the intervening time.").

Defendants argue that more direct conduct by a municipal policymaker is required in order for Plaintiffs to truly rely upon the principles set forth in *Pembaur*; the more nebulous "policy" of enforcing state law is redundant to the preexisting obligations of enforcement as a state agent. In *Pembaur*, the court expressly stated that "[t]he 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479 (emphasis in original).

The *Monell* Court described a municipal policy as including "a policy statement, ordinance, regulation, or decision officially adopted and promulgated . . . ." 436 U.S. at 690. An actionable

-13-

"custom," in contrast, "has not received formal approval through . . . official decisionmaking channels." *Id.* at 690-91. A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue. *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). Here, Plaintiffs allege that there was an actionable policy. The undisputed facts, however, are insufficient to impose municipal liability against the County.

Sheriff Goyt and Prosecutor Gage's decision to conduct a briefing session to provide the officers with the text of a statute before a situation where it might apply does not rise to the level of becoming a policy under *Monell* and its progeny because it did not represent a "deliberate choice to follow a course of action . . . from among various alternatives." *Pembaur*, 475 U.S. at 483. Sheriff Goyt and Prosecutor Gage did not advise the officers *how* to enforce the statute but advised that the statute *could* be enforced if the circumstances warranted. Municipal policies are typically intended to establish fixed plans of action to be followed under similar circumstances consistently and over time. In the instant case, the subordinates were merely made aware of the existence of the state criminal statute that might apply. Although it was previously suggested that the statute may be facially unconstitutional, it has also been made clear that it is unlikely that the entirety of the statute is unconstitutional and that it would be unreasonable to charge Defendants with recognizing that the statute could be facially unconstitutional. Because the briefing session held before the funeral was insufficient to establish the enforcement of Michigan's funeral protest statute as municipal policy, Defendants' motion for summary judgment as to Plaintiffs' municipal liability claim will be granted.

### C.   Plaintiffs' Constitutional Claims

As noted previously, Plaintiffs' challenge to the Michigan funeral protest statute on its face

and as-applied has been addressed in the Court's earlier opinion. The Lowdens contend that their constitutional rights were violated by their arrest under the statute because it is always unlawful to enforce a facially unconstitutional statute and a person arrested under the authority of such a statute necessarily suffers a constitutional injury. The Court has already concluded that Deputy Kahsin is "entitled to qualified immunity on Plaintiffs' facial challenges" because it was not "clearly established," at the time of the Lowdens' arrest, that the statute was unconstitutional on its face. [Dkt. # 52 at 14]. Therefore, Plaintiffs' facial challenges remain only against the County, which is not entitled to qualified immunity. *See Owens v. City of Independence*, 445 U.S. 622, 638 (1980).

Plaintiffs' surviving claims against Deputy Kahsin, by contrast, are based on the manner and circumstances in which he applied the statute—and more specifically, whether that particular application of the statute violated the Lowdens' clearly established constitutional rights under the First, Fourth, and Fourteenth Amendments. *See, e.g.*, *Thompson v. Campbell*, 81 F. App'x 563, 569 (6th Cir. 2003) (analyzing facial and as-applied challenges as "distinct constitutional claim[s]"). Qualified immunity must be denied " 'if it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' " *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). At the same time it was determined Kahsin was entitled to qualified immunity on Plaintiffs' facial challenges, it was also concluded that Kahsin is "not entitled to qualified immunity on Plaintiffs' as applied claims because . . . it was clearly established that enforcing the Michigan statute in the factual circumstances that are alleged violated the Lowdens' constitutional rights." [Dkt. # 52 at 15].

Now that discovery is complete, Plaintiffs assert that the only remaining question is whether the "factual circumstances . . . alleged" are actually what occurred because the discovery record

-15-

reflects that there is no genuine dispute that Plaintiffs' material allegations are true. Thus, not only must qualified immunity be denied, but Plaintiffs believe that they are entitled to a judgment on the question of liability as a matter of law. Defendants, however, caution that the transitional interplay between the two standards of review—the standard for qualified immunity based on the pleadings and the standard for summary judgment—is not as "black-and-white" as Plaintiffs suggest and that the Court's prior opinion addressing the question of qualified immunity must be distinguished from Defendants' responsibility as a matter of law. For purposes of their motion under Rule 56(c), Defendants suggest that several important factors impede Plaintiffs' suggestion: the standard of review requirement that the record be viewed in the light most favorable to the non-moving party; the facts provided through discovery that are not alleged in the Complaint; allegations that are not ultimately established as fact from the evidence; judicial attitudes about due process and the requirement that a plaintiff establish their claim; and the general preference for deciding legal questions based upon a complete record.

### 1.   Plaintiffs' As-Applied First Amendment Claim

Extensive attention was given to the law governing Plaintiffs' First Amendment claims in the earlier opinion. [Dkt. #52 at 24-41]. To summarize, valid "time, place and manner" laws may be constitutional but they may not be enforced based on the content or viewpoint of the communication. *Logsdon v. Hains*, 492 F.3d 334, 346 (6th Cir. 2007) (qualified immunity denied where facially neutral law was enforced based on the content of the speech). In a public forum, content-based discrimination is presumptively unconstitutional, and view-point based discrimination is always forbidden. *Pleasant Grove City v. Summum*, 129 S. Ct. 1125, 1132 (2009). The Court previously concluded that Plaintiffs' First Amendment as-applied claim alleged both content and

-16-

viewpoint discrimination and—based on the facts alleged—denied Kahsin's request for qualified immunity. [Dkt. #52 at 41]. Plaintiffs now contend that, with discovery complete, there is no dispute about the materials facts relevant to Plaintiffs' First Amendment as-applied claim and that they are entitled to judgment as a matter of law.

Plaintiffs emphasize that Kahsin has now acknowledged that his arrest of the Lowdens was based on the content of the communication of the signs alone. According to Kahsin, the signs were not appropriate for a funeral. [Dkt. #81 Ex. E Kahsin Dep. at 45]. Although nearby spectators waved American flags and displayed their own signs thanking Corporal Motley for his service to the country, Kahsin did not consider those displays to be a violation of the funeral protest statute and would not have taken action against the Lowdens had their signs been supportive of Motley and not critical of the government. [Dkt. #81 Ex. E Kahsin Dep. 35-40, 46-47].

Defendants advance two discernable arguments in opposition to Plaintiffs' motion. First, Defendants suggest that First Amendment claims require proof "at least in part [of] the application of subjective standards" by the defendant, in contrast to Fourth Amendment claims that are "governed by the standard of objective reasonableness." [Dkt. #88 at 14]; *Block v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). Defendants mischaracterize Plaintiffs' claims. Plaintiffs do not contend that Deputy Kahsin retaliated against the Lowdens because of his personal disagreement with their message. They only contend that he acted on the content and viewpoint expressed in the Lowdens' signs and no more. Plaintiffs must only demonstrate that the arrest was motivated "at least in part" by the speech and that there is "a causal connection" between the speech and the arrest. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Kahsin's testimony satisfied that criteria.

Defendants advance a second argument that Deputy Kahsin should be entitled to qualified

immunity because it is not reasonable to expect an officer in Deputy Kahsin's circumstance to know whether the statute was constitutional. Defendants' argument was addressed in the earlier opinion. Deputy Kahsin, in Plaintiffs' view, is entitled to some empathy for trying to interpret the "adversely affect" language of the statute.  Indeed, that very concern underlies and corroborates Plaintiffs' assertion that the "adversely affect" language is unconstitutionally overbroad and vague.  That said, the gravamen of Plaintiffs' First Amendment claim is that the Lowdens' arrest, while performed under the guise of the implicated statutory language, was nevertheless based upon the content and viewpoint of the Lowdens' messages.  Based on this clearly established First Amendment law, qualified immunity must be denied.  Based on the uncontested material facts, Plaintiffs are entitled to summary judgment as to Kahsin's liability for Plaintiffs' First Amendment as-applied claim.

### 2.   Plaintiffs' Fourth Amendment Claims

Plaintiffs next argue that Kahsin is liable for at least two separate violations of the Lowdens' clearly established Fourth Amendment rights. First, Plaintiffs contend that Kahsin pulled the Lowdens out of the funeral procession for an investigatory stop without reasonable suspicion to believe that the statute was violated. Second, Plaintiffs contend that Kahsin later arrested the Lowdens without probable cause to believe that the statute was violated. Kahsin earlier conceded that Plaintiffs' complaint "stated a claim with respect to the allegations in support of their Fourth Amendment claim related to the absence of probable cause and that genuine issues of material fact exist for determination by this Court at a later date." [Dkt. #26 at ¶ 6]. However, Plaintiffs now contend that there are no material facts have been developed in discovery that would preclude a decision granting their motion for summary judgment. Consequently, Plaintiffs request that qualified immunity be denied, and summary judgment be entered on their Fourth Amendment claims.

### a.    Kahsin's Investigatory Stop

Plaintiffs first assert that Kahsin stopped the Lowdens without reasonable suspicion. A brief investigatory stop violates the Fourth Amendment unless it is "supported by reasonable suspicion to believe that criminal activity may be afoot, . . . justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). In this case, Kahsin pulled the Lowdens' van out of the procession for an investigatory stop. When deposed, Kahsin gave two different explanations for why he did so.

First, Kahsin explained he stopped the Lowdens because he thought their van was "disruptive and kind of suspicious in nature." However, Kahsin acknowledged that the Lowdens were not honking their horn, communicating with others along the procession route, or otherwise disturbing the peace; and there had been no complaints from the general public about the Lowdens' conduct. It is well established that an officer's belief that someone who "looked suspicious," standing alone, does not satisfy the reasonable suspicion standard. *See Brown v. Texas*, 443 U.S. 47, 52 (1979); *United States v. Keith*, 559 F.3d 499 (6th Cir. 2009).

Second, Kahsin testified that he stopped the van because it had numerous signs taped to the inside of its windows that appeared to have an anti-government message. Plaintiffs emphasize that Kahsin's additional observation, without more, also does not justify a brief investigatory stop; neither the funeral protest statute nor any other law prohibits driving peacefully in a funeral procession with signs that criticize the government. *See City of Ladue v. Gilleo*, 512 U.S. 43, 58 (1994) ("Most Americans would be understandably dismayed . . . to learn that it was illegal to display from their window an 8- by 11-inch sign expressing their political views."). In sum, Kahsin

could "point to [no] specific, articulable facts that gave rise to a 'reasonable suspicion' that the [Lowdens were] engaged in criminal activity." *United States v. Gross*, 624 F.3d 309, 315 (6th Cir. 2010).

Defendants disagree and contend that the argument, carried to its logical conclusion, would result in an officer being unable to stop an individual to determine whether there was a violation of Michigan's funeral protest statute no matter how "suspicious" a displayed sign might look to an officer who could not fully see or read the contents of the sign.

Defendants further argue that unlike the First Amendment claim, "the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment." *Bond v. United States*, 529 U.S. 334, 338, n.2 (2000). Defendants continue to argue that under the applicable objective reasonableness standard, the Court should deny Plaintiffs' motion for summary judgment as to the investigatory stop because Kahsin is entitled to immunity under both prongs of the qualified immunity analysis. However, the Court has previously concluded that Deputies Kahsin is not entitled to qualified immunity on Plaintiffs' Fourth Amendment cause of action [Dkt. #52 at 5].

The discovery in this case has not identified any new facts that would warrant the Court's reconsideration of qualified immunity for Deputy Kahsin on Plaintiffs' Fourth Amendment claims. Even viewing the facts in a light most favorable to Defendants, Kahsin's investigatory stop was improper.  Kahsin's investigatory stop was not "supported by reasonable suspicion to believe that criminal activity may be afoot" even under any reasonable interpretation of the "adversely affect" language of the statute. Furthermore, the stop was not "justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity," based on Kahsin's limited

-20-

knowledge about the signs in the Lowdens' van windows. Plaintiffs' motion for summary judgment based upon the violation of the Lowdens' Fourth Amendment for Kahsin's investigatory stop will be granted and Defendants' motion for summary judgment on this claim will be denied.

### b.   The Lowdens' Arrest

Plaintiffs further contend that Kahsin arrested them without probable cause and that they are entitled to summary judgment as to liability on this additional claim because there is no dispute about the material facts. A warrantless arrest violates the Fourth Amendment unless it is supported by probable cause to believe a crime "has been or is being committed;" a standard more demanding than reasonable suspicion and one that "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2002). Speech protected by the First Amendment cannot serve as probable cause for an arrest—even when the arresting officer claims to have identified a statute that he believes covers the speech in question. *See Leonard v. Robinson*, 477 F.3d 347, 361 (6th Cir. 2007) (in the context of a board meeting where the speaker was not found to be out of order); *Swiecicki v. Delgado*, 463 F.3d 489, 499 (6th Cir. 2006) (finding lack of probable cause for an arrest under the fighting words doctrine); *Sandul v. Larion*, 119 F.3d 1250, 1256 (6th Cir. 1997) (also finding lack of probable cause for an arrest under the fighting words doctrine).

Shortly after Kahsin made the decision to remove the Lowdens from the funeral procession, he decided to arrest them. Kahsin did not learn anything during his brief discussion with the Lowdens to establish probable cause for making a custodial arrest. Kahsin's only basis for arresting the Lowdens was that there were anti-government signs taped to the inside windows of their van. There was no evidence that the Lowdens were disrupting, disturbing, or even adversely affecting

-21-

the funeral procession. *See* Mich. Comp. Laws § 750.167d(1)(c).

The standard of probable cause to justify an arrest requires facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing that the circumstances have shown that the suspect has committed, is committing, or is about to commit an offense. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Kahsin has acknowledged that he made the arrest because of the Lowdens' speech and, even when viewing the facts in a light most favorable to Kahsin, a prudent person of reasonable caution would not believe that the Lowdens' signs inside their van were prohibited by the funeral protest statute. Indeed, that is particularly true given the Lowdens' responses that they were invited to the funeral, were included in the funeral procession, and were not intending to protest. Because there are no material facts in dispute and probable cause for an arrest did not exist even under the most flexible interpretation of the "adversely affect" language of the funeral protest statute, Plaintiffs are entitled to summary judgment as to Kahsin's liability for violation of their Fourth Amendment rights for the Lowdens' arrest.

### D.   Plaintiffs' Fourteenth Amendment Due Process Claim

Lastly, Plaintiffs contend that Kahsin violated the Lowdens' clearly established due process rights in arresting them under Michigan's funeral protest statute. Plaintiffs note that the Court has already agreed that the facts alleged in their complaint support an as-applied vagueness claim:

> [E]ven if a statute is not impermissibly vague on its face, it is subject to a due process challenge when its application in a particular case "failed to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden," quoting *Palmer v. City of Euclid*, 402 U.S. 544, 545 (1971) (per curiam). Here, an ordinary person would not understand how a law against "adversely affecting" a funeral prohibits close friends of the deceased from driving peacefully in a funeral procession simply because homemade political signs are taped to the inside windows of their car. Viewing the facts in the light most favorable to Plaintiffs, a reasonable

officer could not have concluded that the statute gave the Lowdens fair notice that such conduct was forbidden. *Leonard*, 477 F.3d at 359. Notably, Deputies Kahsin and Woodcock have yet to advance any facts to undercut Plaintiffs' version of the events.

[Dkt. #52 at 23-24].

Plaintiffs contend that Kahsin has not developed any facts in discvoery to undercut Plaintiffs' version of the events. Instead, it is undisputed that Kahsin arrested the Lowdens because homemade political signs were taped to the inside windows of their van. According to Kahsin, he "did not believe they were appropriate." Pl.'s Mot. for Summ. J. Ex. E at 45. Plaintiffs argue that Kahsin's predicament in deciding whether the statute was or was not violated demonstrates the arbitrary nature of the statutory language and that they are therefore entitled to partial summary judgment on their as-applied vagueness claim. *See Smith v. Goguen*, 415 U.S. 566, 573-75 (1974).

Plaintiffs, however, confuse their challenge to the constitutionality of the statute, which is a product of the state legislature's work, with their challenge to Kahsin's constitutional misconduct under the First and Fourth Amendments. Plaintiffs' Fourteenth Amendment claim as to the unconstitutionality of the funeral protest statute raises a separate question from their § 1983 causes of action against Kahsin. Because Plaintiffs do not have a viable due process claim against Kahsin, Defendants' motion for summary judgment on this claim will be granted.

### III.   Plaintiffs' Renewed Request for Declaratory Judgment

### A.   Declaratory Judgment on the Constitutionality of the "Adversely Affect" Language of Michigan's Funeral Protest Statute

Following supplemental briefing from the parties [Dkt. #54; Dkt. #57], the Court concluded that it was appropriate to "exercise discretion to entertain Plaintiffs' request for declaratory relief." [Dkt. #58 at 20]. At the time Plaintiffs filed their motion for partial summary judgment, their motion

-23-

for a declaratory judgment on the constitutionality of Michigan's funeral protest statute remained pending. [Dkt. #59]. The Court later denied Plaintiffs' motion without prejudice, finding it prudent to decline to determine the precise scope of declaratory relief that may be appropriate as to Plaintiffs' facial challenges until the as-applied claims were resolved. Now that the issues have been fully briefed and the facial validity of the statute is squarely before the Court, Plaintiffs request that the Court exercise its discretion at this time to declare the statute unconstitutional. *See* 28 U.S.C. § 2201(a); Fed. R. Civ. P. 57.

The facts and legal arguments of all parties regarding Plaintiffs' request for declaratory judgment have been fully set forth in the Court's March 26, 2010 opinion and order [Dkt. #52] and the Court's July 1, 2010 opinion and order [Dkt. #58]. As previously stated, the "adversely affect" language is clearly implicated by both Plaintiffs' overbreadth and vagueness claims. [Dkt. #58 at 17]. Indeed, this is evidenced by the resulting First and Fourth Amendment violations that occurred when the Lowdens were arrested without probable cause because the signs displayed in their vehicle were unsupportive of the government. The statute provided too little advice to the officers and a reasonable interpretation of the statute clearly implicated protected rights under the First Amendment. Accordingly, it is appropriate to issue a declaratory opinion that Michigan Compiled Laws § 750.167d(1)(c) is unconstitutional on its face under the First and Fourteenth Amendments because it is vague and overbroad insofar as it prohibits conduct that will "adversely affect" a funeral or funeral-related event as set forth in the statute. The severability provision of Michigan Compiled Laws § 8.5 applies, and accordingly only the term "adversely affect" is implicated by the facts of the case and not to the remainder of the statute.

**B.  Plaintiffs' Request for Declaratory Judgment as to the 500-foot "Floating Buffer Zone" Included in Michigan's Funeral Protest Statute**

Plaintiffs also request that the Court exercise its discretion to declare the 500-foot floating buffer zone around all funerals and funeral processions unconstitutional because it is overbroad and does not place reasonable restrictions on the time, place, and manner in which constitutionally protected activity may occur.

Plaintiffs' challenge the "adversely affect" language of the statute in part because of how the statute was applied to the specific parties and circumstances at issue. This is a "preferred route" for litigation because it confines judicial review to a "discrete factual setting." *Warshak v. United States*, 532 F.3d 521, 529-30 (6th Cir. 2008). Facial challenges, such as Plaintiffs' challenge to the 500-foot floating buffer zone, however, seek to prevent any application of the law no matter the setting and "no matter the circumstances." *Id.* at 528. Facial challenges are disfavored because

> (1) "they raise the risk of premature interpretation of statutes on the basis of factually barebones records," *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008); (2) they undermine "the fundamental principle of judicial restraint," which counsels that "courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied," *id.*; and (3) they run the risk of "a judicial trespass," in which the court strikes down a law "in all of its applications even though the legislature has the prerogative and presumed objective to regulate some of them," *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc). For these reasons, a facial attack is "the most difficult challenge to mount successfully," requiring the plaintiff to establish "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987).

*Thomas More Law Center, et al. v. Obama*, No. 10-2388, 2011 WL 2556039, at *23 (6th Cir. June 29, 2011) (Sutton J., concurring).

The 500-foot buffer zone is not implicated by the facts before the Court and the Court is

appropriately cautioned to restrain from issuing a declaratory judgment on the floating buffer zone's constitutionality. The instances where the 500-foot buffer zone could be applied to create a chilling effect on protected speech is not so great to warrant addressing the question where there is a substantial likelihood of a state court narrowing the language of the statute. It is instead appropriate to defer to the state courts to address the constitutionality of the statute's 500-foot floating buffer zone in the context of specific facts.

## VI.    Conclusion

Accordingly, it is **ORDERED** that Plaintiffs' motion for partial summary judgment [Dkt. #81] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Defendants' motion for summary judgment [Dkt. #88] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Defendant Clare County is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the Final Pretrial Conference and Motion Hearing scheduled for September 14, 2011 at 2:00 p.m. is **CANCELED**.  An in-person status conference is **SCHEDULED** for **September 26, 2011 at 4:00 p.m.**

It is further **DECLARED** that, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, that Michigan Compiled Laws § 750.167d(1)(c) is unconstitutional on its face under the First and Fourteenth Amendments insofar as it prohibits conduct that will "adversely affect" a funeral or funeral-related event as set forth in the statute.

It is further **ORDERED** that, in accordance with the severability provisions of Mich. Comp. Laws § 8.5, the Court's declaration shall apply only to the term "adversely affect" and not to the remainder of the statute.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 8, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 8, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

---